BILL HAMPTON v. THE STATE.

No. 14796.    Delivered January 27, 1932.

The opinion states the case.

*Oxford & McMillan,* of Stephenville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE. — Conviction for transporting intoxicating liquor; punishment, one year in the penitentiary.

A party in which were three young girls about fifteen or sixteen years of age, Barney Cage, a married man about forty-five years of age, appel-

lant, a man of about thirty-eight, and another man named Bland, went out for a car trip. "Pity 'tis, 'tis true; 'tis true; 'tis pity",—that apparently the girls were the instigators and originators of the trip. During most, if not all, of said time Cage was drunk, appellant was drinking, and a bootlegger's joint was visited.

A girl, whom we will call N, was the first witness. Only so much of her testimony as bears on the issue of transportation of intoxicating liquor, will be discussed. She said that at a fork of the road appellant and Cage took a drink; that she did not know what they drank; that she did not smell it. They drank out of a fruit jar. The party went seven or eight miles and appellant and Cage had another drink; that the drinks did not seem to affect appellant, but Cage seemed to get drunk and talked about how much property he had along the road; that he got richer every time he took a drink. This witness testified that she had smelled whisky, but as to this "Stuff that these men drank smelling like whisky, I don't know; I didn't get to smell it."

Bland testified that said parties had a jar of something which he told them he did not like the smell of, and to keep it away from him. Bland was driving the car. He said that appellant and Cage drank from the jar. He testified that Cage was drunk before they left town and drunk all the time they were gone and when they got back. Asked as to the smell of the contents of the jar, witness said it smelled sour, but that he had never smelled whisky, unless what was in this jar was whisky. He said that what Cage drank started him to singing, and when he walked he would reel, but did not say that the last mentioned condition was the result of what Cage imbibed while on the trip. He reiterated that Cage was drunk when they started out and all the way during the trip.

Another of the girls whom we will call B, testified, and referring to what the men drank, she said she guessed it smelled like whisky; that she had smelled whisky one time when she was sick, and as well as she could remember it smelled like that. She said they had a pint jar. Another witness testified that he saw Cage about 6:30 p. m. on the day of said trip, and after the party returned, and that Cage was then drunk.

At this point the state rested her case. Without introducing any testimony appellant also rested his case. The state then brought back the first girl who had testified, put her on the stand, and she swore at this time that the contents of the jar in question was whisky, and that she knew it because she smelled it; that she knew whisky by smelling it; that this liquor did not smell like home brew; that she had smelled plenty of whisky.

These facts have been gone into thus at some length as illustrating the proposition that the state seemed doubtful of its case when it first rested, and accordingly brought back on the witness stand the girl who

first testified, and who, when first upon the witness stand, declined to say that the contents of the jar transported by appellant and the party, was whisky, or that it smelled like whisky, but said she did not get to smell it. As stated above, when brought back this witness gave testimony directly contrary to what she had first given and affirmed that she did smell the contents of said jar, and that same was whisky.

It is undoubtedly true that within its province of passing on the credibility of witnesses, the jury had the right to accept as true the last testimony of this witness, and in such case, if there were no other matters in the record which could or might have harmfully influenced said jury, and possibly led them to find appellant guilty, we would not be disposed to disturb the verdict.

By two bills of exception complaint is made of the fact that over the objection of appellant, and after both sides had closed their testimony, the state put on two well known and credible witnesses who testified that the general reputation of appellant for being a peaceable and law-abiding citizen was bad in the community in which he resided. That this was error under the facts of this case seems plain. True, appellant's father had taken the witness stand and testified without objection that appellant had never been convicted of a felony.

We learn from the discussion appearing in each of said bills of exception, had between the court and counsel for both the state and appellant, that appellant had filed an application for a suspended sentence herein,— but that the trial judge had stated he would not submit to the jury the issue as to such suspension of sentence. We nowhere find in this record any other showing that application for such suspended sentence had been filed. None appears in the record. The court below, in view of the fact that chapter 138, Acts Regular Session, 42nd Legislature, 1931, (Vernon's Ann. P. C., art. 689) allowing suspended sentences in liquor cases, regardless of age, had not become effective at the time of this trial, was correct in declining to submit the issue of suspended sentence to the jury.

The evidence of appellant's bad character had not been introduced at the time the application for suspended sentence was in effect withdrawn by the announcement of the court, but was admitted afterward. The application for suspended sentence being withdrawn, this issue was not before the jury, and evidence pertinent thereto or otherwise made admissible by the filing of same, would not be admissible after such plea was withdrawn. See Harmon v. State, 119 Texas Crim. Rep., 426, 45 S. W. (2d) 583, opinion handed down January 20, 1932. Few if any more harmful facts can be put before a jury trying one for crime, speaking generally, than that in the estimation of those who live about him, the accused is a bad man, has a bad reputation. As with proof of a good reputation,—which has often been held enough to turn the scale toward

the accused in a case otherwise doubtful, so also in a case where the proof in favor of the state has in it elements of doubt, who can say but that improper proof of bad reputation may have turned the scale against the accused, the appellant in this case. We think it true that ordinarily when men of mature years take thoughtless young girls, almost children, out on expeditions of the kind depicted in this record, that juries who are satisfied of their guilt are not apt to inflict the lowest penalty, as in this case, and its infliction gives rise to some question as to what caused it here. We do not care to enter the realm of speculation, but it would be easy to conclude that the jury were unwilling to convict upon the testimony of the state except as they might have been influenced by the fact that they were trying a bad man.

Bill of exception No. 5 sets out that state witness Bland had given certain testimony, ending with the statement that he did not know what the contents of the jar carried in the car smelled like. At this point the court had the jury removed, and the following took place as appears in the bill of exception: The judge said, " 'Did you know you were under oath, that you are sitting there telling lie after lie; you have sworn lie after lie; Mr. District Attorney, I want you to file a complaint against him as soon as this thing is over, this is no foolishness; you think you are going to get by the court, you had better tell the truth,' and the witness answered that he was telling the truth 'Whereupon the court stated, You are not doing any such thing,' and defendant's counsel excepted and asked for a bill of exception."

This bill is qualified by the following statement of the court below:

"With the following explanation,—to-wit, it was evident in the mind of the court and all who heard the witness testify not only by his conduct, but his dodging and making evasive answers to the questions of the district attorney that he was not telling the truth, and this court personally knew that some of his statements were false; for instance, the statements, 'that I don't know how whisky smells.' And that he never tasted any whisky in his life, and the court just wanted this witness to tell the truth which he knew he was not doing and for this reason had the jury retired and admonished him to tell the truth."

If the trial court knew the witness was giving false testimony of material character, it would have been proper for him to have testified to such knowledge before the jury, but we are inclined to think the learned trial judge allowed what may have been his righteous indignation to lead him too far in this matter. The judge on the bench can not too scrupulously refrain from the very appearance of partiality. He is for neither side in any litigation. The state has its officers to look after its interests in any case. Without bias or prejudice the judge should rule as the law commands,—blind alike to friend and foe. It is suggested in this bill of exception that the witness gave different testimony, more

favorable to the state, after the occurrence and statements above detailed. We do not undertake to set out the testimony, but are of opinion that in the two matters indicated the learned trial judge fell into error for which the judgment must be reversed, and remanded, and it is so ordered.

*Reversed and remanded.*