**Frank Earl FLECK, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 36943.**

Court of Criminal Appeals of Texas.

June 27, 1964.

James Keith Marks, Dallas, for appellant.

Henry Wade, Dist. Atty., Dallas, William F. Alexander, Frank Watts, A. D. Jim Bowie and C. M. Turlington, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for robbery; the punishment, ninety-nine years.

The evidence of the state reveals that the appellant was positively identified as the same person who entered a bank about 2 p. m., June 28, 1963, with a cloth mask covering his nose and face and carrying a double barrel sawed-off shotgun in his right hand; that he approached the center of three adjoining cages occupied by paying tellers, threw a sack into the center cage and said "fill it up right now," while pointing the gun toward the center teller and demanding that the other tellers pass their money to the center, which they did.

The witness Black, center teller, testified that the money was in his possession, and that without his consent and against his will he delivered more than $60,000 in money to the appellant because he was in fear of serious bodily injury and his life.

The witness Crompton testified that while living in a trailer house rented by appellant, to which appellant had free access, he found a locked metal box under the bed; that upon forcing the box open he found in it a large sum of money (shown to be in excess of $12,000), various papers, checks, and car titles bearing appellant's name. These were delivered to the officers. Two of the bills removed from the box bore certain identifying marks, and the evidence shows that they were among those bills placed in the sack during the robbery of the bank. A double barrel sawed-off shotgun was found in an automobile in a parking lot near the bank. The shotgun was identified by C. A. Burkhart as being the same shotgun he loaned appellant a short time before the bank was robbed, and that appellant had not returned the gun.

The appellant did not testify, but called several witnesses. He re-called two officers who testified that they searched the trailer house while appellant was in jail and never found a metal box. One of the officers stated that he looked under the bed from outside the trailer house and did not see a metal box under it. Another witness testified that as she was entering the bank she met a man, who was wearing a mask and carrying a gun, leaving the bank. In several ways, the physical description of the man and his clothing as given by her does not correspond with that of the state's witnesses.

By informal and formal bills of exception, each of the following matters is presented and urged as grounds for reversal, and they are all considered in the light of the opinion in Moore v. State, Tex.Cr.App., 380 S.W.2d 626.

It is insisted that it was error for the trial court to reprimand appellant's attorney in the presence of the jury.

During the cross-examination of a state's witness the appellant's attorney asked:

"Q. You're an embezzler aren't you, Mr. * * *"

State: "We object to that, Your Honor."

Court: "I sustain the objection."

State: "And ask that the jury be instructed to disregard it."

Court: "I sustain the objection, and I'll fine you $100.00 if you ask that question again. Ask it once more and I'll put you in jail for seventy-two hours."

Appellant: "Your Honor, I don't understand the nature of the objection that Mr. * * *"

Court: "I told you at the beginning when you came to the bench this morning not to ask that question ·without removing the jury, and you understood what I meant, too."

Appellant: "Note our exception to the Judge's ruling."

■ No objection was made to the remarks of the court. There was no request to instruct the jury not to consider the remarks, and no motion was made for a mistrial. Although counsel should not be reprimanded in the presence of the jury, the remarks of the court in the light of the previous instructions to counsel not to ask the question in the presence of the jury, and his failure to object when the remarks were made, reveal no reversible error.

■ It is contended that the trial court erred in admitting the $12,499.65 in money into evidence over his objection that it had not been connected in any way with the robbery of the bank, and was highly prejudicial.

Including the identification of the two bills found in the metal box in the trailer house rented by the appellant as the same bills that were placed in the sack appellant ordered filled before he carried it from the bank, the summary of the evidence introduced by the state, as herein shown, is sufficient to authorize the admission of the money in evidence.

■ Error is urged on the ground that the trial court denied appellant the right to adequately cross-examine Leonard and Burkhart, two state witnesses. Appellant's claims for reversal, as stated in his brief, are that the court refused to permit him to perfect his bill of exception by showing why and how Leonard's employment as a teller at the bank had been terminated; and the court also refused to permit him to perfect his bill of exception by showing how and why the witness Burkhart came into possession of a considerable sum of money shortly after the bank robbery.

There appears no· connection between the termination of Leonard's employment at the bank, or Burkhart's ·acquisition of a considerable sum of money shortly after the bank robbery, which he testified on voir dire that he had borrowed on a note, and the guilt or innocence of the appellant. Therefore no error is shown.

■ Appellant contends that it was error for the trial court to refuse to require F.B.I. agents, Clark and Brown, appearing under subpoenas duces tecum, to· produce from the F.B.I. files photographs favorable to the appellant.

In his brief the appellant states that "Subpoenas duces tecum were served upon F.B.I. agents Charles Brown and Kyle Clark, since the F.B.I. had used certain photographs for witnesses' use in identifying the bank robber and the Appellant wanted such photographs produced to show that the witnesses were not readily able to identify the Appellant Frank Earl Fleck as the person they believed to be the bank robber."

We quote from the testimony of the witness Clark as to his reasons for the non-production of the records in question:

"THE COURT: I think he said he had been ordered not to ever divulge anything in the file of the F.B.I.

"Q. (By Appellant) You know what pictures I'm talking about, do you not?

"A. I assume you're talking about all of the pictures that were exhibited during the investigation of this case.

"Q. You know some of those pictures?

"A. I have not observed any of the pictures.

"APPELLANT: We urge the Court at this time to make Mr. Clark get those pictures and bring them down here in answer to my subpoena duces tecum, so that we can show the jury those pictures, because of the fact that he does have the control of that file, and there is no other way that we can get at those pictures that were exhibited.

"THE COURT: Motion is denied."

Agent Brown testified that he did show some of the witnesses certain pictures from the F.B.I. files but that no witness was able to identify any of them as being the robber.

The evidence reveals that the bank was robbed June 28, 1963, and the appellant was arrested August 22, 1963, and indicted for bank robbery on September 4, 1963. Between the date of the robbery and the date of the appellant's arrest there was a continuous and intensive investigation carried on by the officers to identify and apprehend the person who committed the robbery. During the period of investigation, the three bank tellers and other employees of the bank who were present in the bank at the time of the robbery were interviewed, re-interviewed, and had exhibited to them numerous photographs by the officers, in an effort to have the robber identified from the photographs.

To recapitulate, none of the witnesses identified any person whose photograph was exhibited to them for examination as the person who robbed the bank. According to the record no one identified the appellant, from a picture, as the robber until after his arrest. *Neither of the officers, Clark or Brown, was asked if appellant's picture was among those shown to the witnesses.*

The subpoenas duces tecum for the witnesses Clark and Brown are not contained in the record. There is no showing as to the identity of the photographs sought by the subpoenas *except those that were favorable to the appellant.* This delegation of the officers to act for the appellant in selecting those photographs favorable to him was not obligatory.

Assuming that the trial court had the authority to order the photographs to be produced in court, it is concluded that the uncertainty of the demand for photographs, and the failure of any witness to identify the appellant from photographs as the robber before his arrest, show no reversible error by the court's refusal to order them produced. Ex parte Gould, 60 Tex.Cr.R. 442, 132 S.W. 364, 31 L.R.A.,N.S., 835.

■ The evidence is sufficient to support the conviction and no error appearing, the judgment is affirmed.

Opinion approved by the Court.

WOODLEY, Presiding Judge (concurring).

. The Formal Bills of Exception were filed with the clerk on February 19, 1964, and were examined and approved by Trial Judge J. Frank Wilson on February 28, 1964, " * * * with the following explanation, and qualification. Any matter of fact or recitation set forth in the Bill which are at variance from the facts shown in the official record in this case as prepared by the Court Clerk and the Court Reporter are not certified by me as true, but are certified by me as being contention— of the defendant."

The appellant took no exception to the court's qualifications, nor did he agree thereto and he filed no bystander's bills. By the qualifications of his formal bills, the appellant was relegated to his informal bills.

If, however, the court's qualification was "tantamount to no action at all," as held by the majority in Moore v. State, Tex.Cr. App., 380 S.W.2d 626, the formal bills

must be considered as approved without qualification and as certifying reversible error.

Bill No. 1 considered as approved without the court's qualification certifies that the court deprived the defendant of due process of law under the Fifth and Sixth and Fourteenth Amendments of the United States Constitution and Art. 1, Sec. 10 and Sec. 15 of the Texas Constitution, Vernon's Ann.St., and Sec. 2(a) of Art. 759a of Vernon's Annotated Texas Code of Criminal Procedure.

Also it certifies that the rejected testimony the defendant offered and sought to offer of the witness Jerry Leonard " * * would have been admissible to show interest, bias and motive by the said Jerry Leonard to testify falsely against the defendant, and such facts which defendant sought to offer would have impeached the testimony of the said Jerry Leonard."

Bill No. 3, considered as approved without qualification, certifies that in reprimanding defendant's counsel in front of the jury, the defendant's rights were prejudiced in the manner stated "and the harmful effect of (the court's) comments were such that they could not be cured or removed by instructions to the jury."

Bill No. 4, as originally presented, certifies that by refusing to require the F.B.I. agents to produce from their files material evidence favorable to the defendant, in the form of photographs, " * * * the defendant was harmed and was such error on the part of the Court as to require a reversal of this cause."

Bill No. 5, without the court's qualification, certifies that the trial court allowed introduction over defendant's objection of some $12,499.65 in currency " * * * and in as much as there does not appear anywhere in the record any direct evidence showing said currency to have ever been in the possession of the defendant, such admission of the currency was such error as to deny defendant a fair trial."

It is the view of the writer that the Moore case is wrong and the majority opinion herein is correct in not considering the Formal Bills of Exception as though approved without qualifications.