Earl Florence CRUTCHER, Appellant,

v.

The STATE of Texas, Appellee.

No. 44958.

Court of Criminal Appeals of Texas.

June 7, 1972.

Daugherty, Bruner, Lastelick & Anderson by Fred Bruner and Roy L. Merrill, Jr., Dallas, for appellant.

Henry Wade, Dist. Atty., Harry J. Schulz, Jr., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This appeal arises out of a burglary conviction where the punishment was assessed at 12 years.

Appellant urges 41 grounds of error including a challenge to the sufficiency of the evidence to sustain the accomplice witness, contentions as to suppression of evidence, jury argument, etc.

Carter Dalton testified that on the night of October 20, 1967, his grocery store was broken into and 550 cartons of various brands of cigarettes were removed from the premises, and that he did not give anyone permission to break and enter the store and to take such cigarettes. The burglary was discovered by an employee who arrived for work the next morning.

Ray Blades, an inmate of the Texas Department of Corrections, testified that he and the appellant burglarized the Dalton Bros. Grocery Store in Dallas County, in October, 1967 and had stolen approximately 200 cartons of cigarettes; that they had used appellant's blue-green Cadillac and had been at the scene from approximately midnight to 3 a. m. He related the next day they sold 100 cartons of cigarettes at a store in Ennis, Texas, and split the proceeds. Blades revealed that at the time of the alleged burglary, he was a Dallas City Police Officer but had subsequently been convicted of five burglaries several years before the instant trial which commenced May 4, 1970. He acknowledged that he had not been charged with the instant offense but denied he had been promised immunity or had made a deal for concurrent sentences in exchange for his testimony.

Dannie Milburn testified he saw a light-colored Cadillac in front of the Dalton Bros. Grocery Store after midnight on October 20, 1967.

Emma Virginia Dees, a waitress, testified she was on her way home about 2:15 a. m. on the date in question when her car stalled on a hill and she let it roll into the parking lot of the Dalton Bros. Grocery Store; that she saw a green car parked in front of the store with its hood raised and two men near the front door who "jumped up" when her car entered the parking lot. One of the men, whom she claimed she had never seen before, came to her car and inquired if she was having trouble. She identified him as the appellant. Later, she walked to a service station where she called her husband who came and got her. She left her automobile on the parking lot. When she returned the next morning to get her car, she learned the store had been burglarized.

Bobby J. Watson related he owned the Hilltop Grocery in Ennis and that on October 21, 1967, he purchased 100 cartons of various brands of cigarettes from the appellant for far less than the regular wholesale price, and that Blades was with the appellant at the time of the sale.

There was no other proof offered to show the cigarettes sold came from the Dalton Bros. Grocery Store.

The court charged the jury that Blades was an accomplice witness as a matter of law and submitted as a fact issue the question of whether Watson was an accomplice with the further instruction that one accomplice witness cannot corroborate another. See Article 38.14, Vernon's Ann.C.C.P.

We need not determine the sufficiency of the evidence to corroborate the accomplice witness Blades as we deem the question of the suppression of evidence dispositive of the appeal before us.

Prior to trial, the appellant filed numerous motions for discovery including a "Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215" motion. The motion was granted.

This, then, is what we have in the instant case. The testimony of Emma Virginia Dees that she saw the appellant at the scene of the burglary at 2:15 a. m. on the date in question was essential to the corroboration of the accomplice witness Blades and necessary to sustain the conviction.

The record reflects that the day after the burglary she told police she could identify the man she had seen the night before and gave them a description. Some three and a half months later, she identified the appellant from the second set of photographs shown to her by the police. Prior to her making an in-court identification, a separate hearing was held to determine whether such identification was tainted by the manner of photographic display. In response to the court's questions, she related she could not recall the weight and age she included in her description to the police, but that the man was 5′ 9″ and was wearing a hat and a brown or tan jacket.

After stating she was basing her identification upon her observations on the night of the alleged offense, the court held that the in-court identification was not tainted by the manner or use of the photographs which the State was unable to produce for inspection. Before the jury, Mrs. Dees made her in-court identification, stating, also, that she had described the man she saw to the police as being 5′ 9″, medium-size, although she couldn't remember the age she included in such description. During her cross examination, the State called the jury's attention to the fact the defense had been given a copy of the witness's grand jury testimony, although it later developed such testimony did not touch on identification and the description given by the witness to the police.

Earlier, at the separate hearing on the in-court identification, the prosecutor stated that if he "had any signed statements" from the witness, he would have produced them.

At the hearing on the motion for new trial, it was shown that Dallas Police Officer John Hedrick, who had talked with

Mrs. Dees and obtained the description of the man she saw, was present during the trial; and had with him his supplemental offense report which contained that description; that he had at the time talked with one of the prosecuting attorneys in the case about his report and his testimony. He was not called as a witness nor were the contents of his report made known to the defense.

The report reflects, and Officer Hendrick testified at the hearing on the motion for new trial, that the day after the alleged offense Mrs. Dees had described the man she saw as a "white male, 20 to 25 years old, 5 feet 9 inches, slender, olive complexion, black hair."

At the hearing on the motion for new trial, it was stipulated that at that time, the appellant was 45 years old, making him approximately 42 years of age on the date of the alleged offense. Appellant also calls attention to his photograph obtained from police files and admitted into evidence at such hearing which is basically inconsistent with the description contained in the offense report.

Further, the report reflected that Mrs. Dees described the car she saw as "a 1965 Chevrolet, Mint Green," although at the trial she testified it was only "a green car" and she couldn't identify the make or model of a car. It was the State's theory that the car used by the appellant was a Cadillac.

In Means v. State, 429 S.W.2d 490, 493–495 (Tex.Cr.App.1968), this court wrote:

"The relatively recent development of the prosecutor's constitutional duty to disclose evidence favorable to the accused began in 1935 with Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L. Ed. 791, and has continued to develop. Certain guidelines and rules have emerged.

"Certainly, we now know, reversal must follow where the prosecutor deliberately presents a false picture of the facts by knowingly using perjured testimony. Miller v. Pate, 386 U.S. 1, 87 S. Ct. 785, 17 L.Ed.2d 690; Pyle v. State of Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214; Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791.

"Reversal must also follow if the prosecutor presents a false picture of the facts by failing to correct its own testimony when it becomes apparent that it was false. Giles v. State of Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737; Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L. Ed.2d 1217; Alcorta v. State of Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9.

"Further, we note that a conviction must be reversed if the prosecutor actively suppresses evidence which may exonerate the accused or be of material importance to the defense. Jackson v. Wainwright, 5 Cir., 390 F.2d 288; Brady v. State of Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215; United States ex rel. Almeida v. Baldi, 195 F.2d 815 33 A.L.R.2d 1407, cert. denied, 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341; Curran v. State of Delaware, 3 Cir., 259 F.2d 707, cert. denied, 358 U.S. 948, 79 S.Ct. 355, 3 L.Ed.2d 353. See Goldstein, 'The State and the Accused: Balance of Advantage in Criminal Procedure,' 69 Yale L. J. 1149 (1960).

"Reversible error is also committed where the prosecutor negligently or inadvertently fails to disclose evidence which may exonerate the accused or which may be of material importance to the defense, even though not offered as testimony at the trial and even though the accused's counsel is not diligent in his preparation for trial. United States ex rel. Meers v. Wilkins, 2 Cir., 326 F.2d 135; Levin v. Katzenbach, 124 U.S.App.D.C. 158, 363 F.2d 287; United States v. Poole, 7 Cir., 379 F.2d 645; Barbee v. Warden, 4 Cir., 331 F.2d 842; Ashley v. State of Texas, 319 F.2d 80, cert. denied 375 U.S. 931, 84 S.Ct. 331, 11 L.Ed.2d 263; See also Thomas v. United States, 9 Cir., 343 F.

2d 49; 'Disclosure of Prosecutor's Evidence—Disclosure of Favorable and Material Evidence Required Although Procurable by Diligent Defense Counsel,' 42 N.Y.U. Law Rev. 764; 'Prosecutor's Failure to Disclose Evidence Equally Available to the Defense May Constitute a Violation of Due Process,' 42 Notre Dame Lawyer 264.

"The standard applied in such cases has been whether the testimony 'may have had an effect on the outcome of the trial.' Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L. Ed.2d 1217.

"The development of the case law on this subject teaches that the good or bad faith of the prosecutor or the lack of diligence by the defense counsel or the lack of request for such information (particularly where defense counsel has no reason to suspect the existence of such evidence) are not the controlling factors they may have once been.

"In Barbee v. Warden, 4 Cir., 331 F. 2d 842, it was said: 'In gauging the nondisclosure in terms of due process, the focus must be on the essential fairness of the procedure and not on the astuteness of either counsel.'

"In Jackson v. Wainwright, 390 F.2d 288, the Fifth Circuit Court of Appeals said:

'In Brady v. State of Maryland, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 the Court made it clear that its primary interest was not to punish misconduct by the prosecutor, but to insure a fair trial to the defendant, and particularly to insure that the trial would bring out, not hide, the truth. Before Brady the Court seemed to have placed some weight on the willfullness of the prosecutor's action, but in Brady the Court said:

' "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material [either] to guilt or to punishment, *irrespective of the good [faith] or bad faith of the prosecution.*" 373 U.S. at 87, 83 S.Ct. at 1196 (emphasis added).

'In accord with Brady lower federal courts have emphasized the harm to the defendant rather than the prosecutor's motive in failing to disclose exculpatory evidence.' "

See also Ex parte Cherry, 456 S.W.2d 949 (Tex.Cr.App.1970); ABA, Standards Relating to the Prosecution Function and the Defense Function, § 3.11(a).

In discussing this general rule, the United States Supreme Court in Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L. Ed.2d 104 (1972), said:

". . . When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule. Napue, supra, at 269, 79 S.Ct. at 1177, 3 L.Ed.2d 1217. We do not, however, automatically require a new trial whenever 'the combing of the prosecutor's files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict. . . .' United States v. Keogh, 391 F.2d 138, 148 (CA2 1968). A finding of materiality of the evidence is required under Brady, supra, at 87, 83 S.Ct. at 1196, 10 L.Ed.2d 215. A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury. . . .' Napue v. Illinois, supra, at 271, 79 S.Ct. at 1178, 3 L.Ed.2d 1217."

■ In the instant case, Mrs. Dees' testimony was essential to the corroboration of the accomplice witness's testimony. Mrs. Dees' credibility as a witness was therefore an important issue in the case and evidence that she had given a description that did not match appellant's age or physical appearance would be relevant to

her credibility and the jury was entitled to know it.[1]

Further, it is observed that at the separate hearing to determine the admissibility of the witness's in-court identification of the appellant, the court attempted to determine the existence of any discrepancy between any pre-photographic description and the actual appearance of the appellant. *Cf.* Martinez v. State, 437 S.W.2d 842, 846 (Tex.Cr.App.1969). But, the witness claimed a lack of memory and the State made no effort to reveal to the court or the appellant the witness's description of the man she saw as contained in the offense report and shown by the record to be available and known to the State.[2]

The standard to be applied in such cases as this is whether the testimony "may have had an effect on the outcome of the trial." Napue v. State of Illinois, supra; Means v. State, supra; Ex parte Cherry, supra. Applying such test, we conclude that it would.

In view of the reversible error described above, we need not discuss appellant's contention that the accomplice witness Blades had been promised immunity if he testified and that such fact was not disclosed by the State. Much testimony was developed on this point and it appears somewhat inconclusive. In the event of a re-trial, the question should be clearly determined. See Giglio v. United States, supra.

While we need not reach the question of whether the numerous jury arguments complained of constitute reversible error or errors, we observe that the court was caused to constantly instruct the jury to disregard the prosecutor's argument.

We do note the prosecutor's argument personally attacking defense counsel in an effort to inflame the minds of the jury to the accused's prejudice should not be condoned. See Bray v. State, 478 S.W.2d 89 (Tex.Cr.App.1972). *Cf.* Grant v. State, 472 S.W.2d 531 (Tex.Cr.App.1971). In the instant case, after one of appellant's counsel momentarily left the court following his argument, the prosecutor stated:

"I'd sort of hoped Mr. Bruner would stay with us in the Courtroom . . . but I can assure you one thing, that wherever he has gone, he is not down on his knees praying to his God. I can assure you that . . . ."

For the reasons stated, the judgment is reversed and the cause remanded.

---

1. The appellant called his 16-year old son who testfied he had worked as a bus boy in the same cafe where Mrs. Dees was employed and that his father frequently came to pick him up and usually sat in the cafe drinking coffee while waiting for the closing time.

2. In a sealed envelope attached to the record, we have found a poorly reproduced copy of a supplementary offense report. It is impossible to tell whether this is a part of Officer Hedrick's offense report or one prepared by another officer. It reflects, however, that a named civilian patrolman, hired by the store, reported he had checked the store on the date in question at 11 p. m., 2:30 a. m. and 4:30 a. m., and saw nothing.