**Charles Wayne ANDERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 50139.

Court of Criminal Appeals of Texas.

July 9, 1975.

James O. Terrell, Waco, for appellant.

Martin D. Eichelberger, Dist. Atty., Lynn Malone and Edward Springer, Asst. Dist. Attys., Waco, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for murder; the appellant's punishment assessed by a jury is imprisonment for five thousand years. The judgment must be reversed because of the improper jury argument made by the Assistant District Attorney.

The evidence is that the appellant, after drinking beer and taking "pills," armed himself with a sawed-off shotgun and knives, and then he broke into the house where his estranged wife, their eleven year old son, Mervin, and the brother of the appellant's wife were living. While she was in bed, the appellant shot his wife three times with a .12 gauge shotgun; it tore her body apart. He followed his son from the house into the yard and shot him twice with the shotgun, but the son recovered and was a witness at the trial. The appellant also cut the throat of his brother-in-law almost from ear to ear, but he too recovered. The horrible facts of this crime did not license the Assistant District Attorney to transgress the rules governing the trial of criminal cases in order to obtain from the jury a five thousand year verdict. The appellant

was represented by court-appointed counsel who was required to exert his best efforts in defending a most difficult case.

The appellant complains in five separate grounds of error about the following part of the argument made by the Assistant District Attorney during the guilt-innocence phase of the trial:

"[ASSISTANT DISTRICT ATTORNEY WARD CASEY]: And I can sympathize with Mr. Terrell, he has got a case that there just isn't any answer for him. He doesn't have guts enough to come up here and think of one theory to tell you, because there is not any way to excuse, there is no way to extenuate, there is no way to justify the facts in this case. So, he come up here with this little question job. And I have never seen anybody weak enough to come up and mealymouth a jury like that and don't even have guts enough himself to say the man is not guilty. He won't even say that himself, his lawyer, but he wants you to go up there and say it.

"MR. TERRELL: Your Honor, I am going to have to object to that. I am going to object first of all to Mr. Casey abusing me as counsel, striking at my client over my shoulder, and ask that you instruct the jury to disregard that. I am also going to have to object because it is not my duty in this case to say whether this man is guilty or innocent. It is solely the province of the jury, and I ask that they be so instructed.

"THE COURT: Ladies and gentlemen of the jury, you will base your verdict on the testimony that you have heard, and not what the attorneys say.

"MR. CASEY: All right, now, let's talk about when Mr. Terrell got out of the record. Mr. Terrell told you all about Mervin being coaxed, wood-shedded, and stories being embellished on, told it to all of his kin folks, and Mr. Casey has wood-shedded and trained him. Did you hear any testimony to that effect? Did you

hear him ask that question? He gets up here, and he didn't have the guts enough to ask that boy, because he knew that he was telling the truth.

"MR. TERRELL: Your Honor, I am going to object. Excuse me, Mr. Casey. I believe it is in the record that I did ask the witness if he was over here with Mr. Casey the other day, and Mr. Casey was going through this with him. I believe that is in the record.

"THE COURT: The jury heard the testimony.

"MR. TERRELL: Okay.

"MR. CASEY: You heard it first from us, ladies and gentlemen, didn't you? You heard from us that I had brought Mervin over here, and I let that little boy sit in this witness chair and see this courtroom, and he was scared to death. You saw him shaking like a leaf. I was doing anything I could to make it easier on that boy. And I introduced him to him, and I was kidding around, and I said, 'He's the bad guy, Mervin'—you know—just kidding. And Terrell knows that is the truth. If it wasn't the truth, he would be up objecting saying it was a lie. He knows it's true, and he knows that is what went down and that's all that went down over here. And there is nothing wrong with me talking to Mervin. I talked to Mervin twice; once at the hospital, and once in my office when I brought him over here and showed him the Courtroom. And we didn't have any little dress rehearsal, ladies and gentlemen, like he would have you believe.

"And I'm going to tell you something that happened at the hospital, since we're on this. I talked to—

"MR. TERRELL: Your Honor, I am going to object to Mr. Casey going outside the record.

"MR. CASEY: Your Honor, it is all invited by what he told this jury.

THE COURT: I'll sustain the objection.

"MR. TERRELL: I ask that you instruct the jury to disregard any testimony from Mr. Casey about what may have happened at the hospital.

"THE COURT: He hasn't made any comments about what happened, Mr. Terrell.

"MR. TERRELL: Okay.

"MR. CASEY: You know, he got up here and testified to you when he wasn't under oath about being embellished, Grandmaw told him how to tell the story, Aunt Hazel told him how to tell the story, Donald Ray told him how to tell the story, and Mr. Casey done all of this—

"MR. TERRELL: Your Honor—

"MR. CASEY: —then when I try to answer him, I don't get to do it, because I'm not a defendant.

"MR. TERRELL: Your Honor, I object to that most strenuously. That is improper argument, It is argument designed only to inflame the minds of the jury. It has nothing to do with the facts material to this case. I ask that the jury be—

"THE COURT: Overruled.

"MR. CASEY: Thank you, Your Honor. May we have credit for these frivolous objections over here that counsel keeps making?

"THE COURT: I'll give you credit for the time.

"MR. CASEY: See, you can think about that, ladies and gentlemen. He doesn't want you to think about it. He wants to pull the wool over your eyes, but you can think about it. He won't argue the law, and he won't argue the facts; all he will do is get up here and lie to you.

"MR. TERRELL: Your Honor, I object to that.

"THE COURT: I sustain the objection.

"MR. TERRELL: I ask you—

"THE COURT: I instruct the jury to disregard it.

"MR. TERRELL: And I ask for a mistrial on that, Your Honor.

"THE COURT: Motion denied.

"MR. CASEY: I'll tell you what, ladies and gentlemen, if we get to the punishment phase—and I'm sure we are—I'm going to call Mrs. Katy Toten up here, and it is going to be in the record what I told her about that little boy, and about people talking to him about this case."

■ The prosecutor should not have argued that appellant's counsel did not have guts enough to argue that his client was not guilty. Defense counsel's objection should have been sustained. The prosecutor's argument that he could not answer because he was not a defendant implied that the rules concerning argument were different for the prosecutor than they were for the defense counsel; it was wrong and should not have been made; the objection should have been sustained. The prosecutor's criticism of defense counsel and the request for more time to argue because defense counsel was allegedly making frivolous objections were not justified and were highly improper. Instead of agreeing with the prosecutor, the court should have admonished the prosecutor against making such unwarranted statements. The prosecutor's statement that defense counsel was trying to pull the wool over the jurors' eyes, that he will not argue the law, and that he will not argue the facts, but that "all he will do is get up here and lie to you," was of such a nature that when it was made, and in the context of the prosecutor's argument which has been quoted, could have only been remedied by granting the request for mistrial. See Lopez v. State, 500 S.W.2d 844 (Tex.Cr.App. 1973); Crutcher v. State, 481 S.W.2d 113 (Tex.Cr.App.1972); Bray v. State, 478 S.W.2d 89 (Tex.Cr.App.1972); Dykes v. State, 168 Tex.Cr.R. 215, 325 S.W.2d 135 (1959). Cf. Edmiston v. State, 520 S.W.2d 386 (Tex.Cr.App.1975). The prosecutor's conduct denied the appellant a fair trial. See Ruth v. State, 522 S.W.2d 517 (Tex.Cr.

App.1975); Boyde v. State, 513 S.W.2d 588 (Tex.Cr.App.1974); Renn v. State, 495 S.W.2d 922 (Tex.Cr.App.1973); Stein v. State, 492 S.W.2d 548 (Tex.Cr.App.1973).

 There are other serious questions raised in this appeal. The appellant did not testify, but during the punishment phase of the trial the Assistant District Attorney argued: "And you know, he said something about look at him and you can tell he is full of remorse and everything, but you haven't heard any 'I'm sorry,' have you?"

"MR. TERRELL: Your Honor, I'm going to object to that. It's a comment upon the failure of the defendant to take the stand.

"THE COURT: Overruled."

It would appear that the jury would consider this was a reference to the appellant's failure to testify even though the State argues it was a reference to the testimony of the two psychiatrists who had examined the appellant. The objection should have been sustained.

During the punishment phase of the trial a psychiatrist, who had examined the appellant and who was called as a witness by the State, was permitted to testify concerning many of the details of the offense related to him by the appellant. There was an objection that this testimony was in the nature of a confession and its admission would violate the appellant's rights under the Fifth Amendment to the Constitution of the United States. If the appellant were in custody and it was not shown that he had waived his constitutional and statutory rights it would appear that the objection should have been sustained. Although there is circumstantial evidence to show that the appellant was in custody on both occasions when he was interrogated and examined by the psychiatrist we find no direct testimony in this record to the effect that he was in custody when he made the statement to the psychiatrist. See Art. 46.-02, Sec. 2(f)(4), Vernon's Ann.C.C.P.; Bal-

lard v. State, 519 S.W.2d 426 (Tex.Cr.App. 1974).

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

DOUGLAS, J., concurs in the result.