**Robert Lewis ANDREW, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 52674.**

Court of Criminal Appeals of Texas.

Dec. 14, 1977.

Harry Louis Zimmermann, Dallas, for appellant.

Henry Wade, Dist. Atty., Gary Love, Les Eubanks, Jr., and Paul D. Macaluso, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ONION, Presiding Judge.

Our majority opinion on original submission is withdrawn and the following is substituted in lieu thereof. The appeal was taken from a conviction for robbery by assault with a firearm under the former Penal Code. Punishment was assessed by the jury at life imprisonment.

The sufficiency of the evidence is unchallenged.

On rehearing appellant urges reconsideration of his contention that the trial court committed reversible error in failing to require the prosecution to reveal the name of a confidential informer, a material witness.

It is well established that unless the informer participated in the offense, was present at the time, or was otherwise shown to be a material witness to the transaction or as to whether the defendant knowingly committed the act charged, his identity need not be disclosed. *Barber v. State*, 511 S.W.2d 937 (Tex.Cr.App.1974), and cases there cited. The appellant recognizes this rule, but argues the evidence in the instant case shows that the informer was present and was a material witness to the transaction. In support thereof, appellant calls attention to the testimony of Officer John Crosby and his attempt to perfect his bill of exception and the action of the trial court

in denying him an opportunity to complete his bill of exception when he was on the verge of proving the informer could identify the persons seen running from the scene of the robbery.

During the trial, Officer John Crosby testified that partly as a result of information obtained from an informer he obtained a search warrant. On voir dire examination of Officer Crosby by appellant's counsel Crosby was asked:

"Q Was this man that you talked to a fact witness to this offense?

"A To some of the facts of the offense, yes, sir.

"Q What is his name, please?

"A I can't give you that, sir."

The court then refused to require the State to divulge the name after the prosecutor stated the informer was not present in the store at the time of the robbery.

Appellant's counsel then asked other questions of Crosby. The record reflects:

"MR. ZIMMERMANN: Let me ask this: Is it a fair statement to say that the confidential informant saw who really robbed the store running in a house?

"THE WITNESS: He saw.

"MR. ZIMMERMANN: He saw the man exit right after the robbery, the grocery store, run in a house and he is a fact witness of seeing him escape from the robbery?

"THE COURT: The court wants time to pass on that. In the morning will be enough time, enough time to get it in the record."

Subsequently, the court announced its intention to allow the appellant to perfect his bill of exception to the refusal to order the disclosure of the name of the informer. First, the court stated:

". . . The Court has been advised by the officer in charge that said witness is a confidential informant, and that he has promised said witness not to reveal his name; that he believes said witness's life would be forfeited if the name were revealed. The Court is advised that the testimony of said witness would simply be that he saw three people running from the scene of the robbery at the time of the alleged robbery and that he would not be able to identify or name any of the said people but he did see where they went and told the officer the house in which said alleged fugitives went; and that is the extent of the testimony which said witness if forced to appear would give; is that correct, Mr. Officer?

"MR. CROSBY: Yes."

It was then established that the court had obtained this information in an ex parte meeting with the prosecutors and Officer Crosby, at which appellant's counsel was not present.

Appellant's counsel then sought to perfect his bill of exception by interrogating Officer Crosby as to the information received from the informant. He then introduced the search warrant affidavit, which in part reflects:

"I have been informed of the foregoing setout facts by a citizen of the City of Dallas, Dallas County, Texas, who I know to be reliable, credible and trustworthy, who states the following facts: That he observed Two Negro Males and a Negro female in white shorts carrying what appeared to be a Shot Gun come running down The Alley from Duncan Grocery Store shortly after 9:00 P.M. August 27, 1973. That he observed these people cut across a vacant lot and run into the house at 1307 South Fitzhugh Avenue. That he observed a man known to him as Autry cruising the area of the Grocery Store before these people ran to 1307 South Fitzhugh and continued cruising for some time. He observed the Negro female and one of the Negro men get in a 1966 Grand Prix Pontiac, two-door Sedan parked at 1307 South Fitzhugh and leave. He observed these people return in twenty minutes. He observed both Negro men and the Negro female get in the

1968 Cadilac (sic) Sedan driven by the man known to him as Autry and drive South on South Fitzhugh Avenue approximately thirty minutes later. He states that these people did not take the Shot Gun with them.

"I have known this informant personally for the last eight years and he has on several occasions given me information that has proven to be reliable and has resulted in several convictions. I know this informant to be reliable, credible, and trustworthy in the past. . . ."

Appellant's counsel then asked Crosby:

"Q   What was the man's name who you were told was involved in this robbery by your confidential informant?

"A   He wasn't sure of a name when I talked to him. I asked him if he knew the people's names and he said it started with an A. I had previously found out through tax records that the car these people were in had been registered to a Walter Lee Autry. I asked him—at that time I said, 'Does the name Autry sound like it'? He said, 'Autry, or Andy or Andrew or something like that,' and at that time I didn't know anything about Robert Andrew (appellant)."

When appellant's counsel sought to ask Crosby about other information he had received from the informer to demonstrate that the informer was a material witness to the transaction but which was "outside the affidavit," the court announced, "This hearing is over." The record then reflects:

"MR. ZIMMERMANN: Judge, I haven't—

"THE COURT: I don't care what you haven't got. You are just horsing around here with this thing.

"MR. ZIMMERMANN: I object to the Court's not allowing me to put in the record—

    *     *     *     *     *     *

"THE COURT: I told you to sit down. This hearing is over.

    *     *     *     *     *     *

"MR. ZIMMERMANN: Judge, may I have another hearing sometime to ask this officer if the name he was told was Autry, Andrew or Andy, why he put in the affidavit only Autry's name?

"THE COURT: I have already ruled. This hearing is over."

■ It is clear that the court terminated the bill of exception when appellant's counsel was beginning to establish that the informer knew that one of the robbers' names started with an A and could be Andrew, the name of the appellant, which would be inconsistent with the court's statement as to what he learned in an ex parte meeting at which appellant's counsel was not present. Despite the fact the trial court cut off the completion of the bill of exception, the informal bill of exception is sufficient to show the informer was a material witness to the transaction and that his identity should have been revealed. The facts are sufficient to bring the case within the holdings of *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and *James v. State*, 493 S.W.2d 201 (Tex.Cr.App.1973).

Appellant's motion for rehearing is granted. The judgment of affirmance is set aside. The judgment is now reversed and cause remanded.

### ON APPELLANT'S MOTION FOR REHEARING

ROBERTS, Judge, concurring.

I concur with the Court's opinion on the Appellant's Motion for Rehearing. However, these are two additional grounds of error which require that this case be reversed.

### I.

During the trial, the trial judge admonished the appellant's counsel as follows:

"THE COURT: Counsel, I think it is highly improper of you to criticize the jury.

"MR. ZIMMERMANN: Your Honor, I object to the Court's comments.

"THE COURT: I object to your manner of argument. You shouldn't tell the jury they couldn't have read the charge in an hour and a half. It was read to them. They didn't have to read it again unless they wanted to—

"MR. ZIMMERMANN: I object to your comments, Your Honor.

"THE COURT: You've been objecting all through the trial. I object to your conduct, too.

"MR. ZIMMERMANN: I object to the Court attacking—

"THE COURT: Don't hold it against the Defendant because Mr. Zimmermann gets out of the record. I've been trying to keep him in the record for years and haven't had any success at it yet.

"MR. ZIMMERMANN: Your Honor, I would object to the entire line of comments by the Court.

"THE COURT: All right. Get on with your argument. I'm getting tired of listening to you.

"MR. ZIMMERMANN: Your Honor, I object to the comments. I would like a ruling on my objections.

"THE COURT: I overrule your objection."

These judicial remarks do not constitute a comment on the weight of the evidence. See Vernon's Ann.C.C.P., Article 38.05. Rather, they comment on the behavior and tactics of appellant's counsel. The proper scope of our inquiry should necessarily follow from the well established rule that although the trial judge can properly admonish counsel to conduct himself properly during the trial, this judicial power is subject to review when the comments are not necessary to control and conduct the trial. An abuse of discretion standard should be relied upon to guide us in this task, and when an abuse of discretion has resulted in prejudice to the accused, our task should be to reverse and remand for a new trial.

A review of prior cases involving judicial remarks which constituted a comment on defense counsel's *conduct and tactics* reveals that the following have been significant factors in determining whether judicial comments were necessary to control and conduct the trial: (1) failure of defense counsel to observe prior rulings of the trial judge and/or rules of evidence, *Williams v. State*, 153 Tex.Cr.R. 438, 220 S.W.2d 663 (1949); *Fleck v. State*, 380 S.W.2d 621 (Tex. Cr.App.1964); *Gaines v. State*, 481 S.W.2d 835 (Tex.Cr.App.1972); *Joshlin v. State*, 488 S.W.2d 773 (Tex.Cr.App.1973); (2) failure of defense counsel to object to the trial judge's comments, *Fleck v. State, supra; Cartwright v. State*, 426 S.W.2d 858 (Tex. Cr.App.1968); *Gaines v. State, supra; Joshlin v. State, supra; Banks v. State*, 510 S.W.2d 592 (Tex.Cr.App.1974); (3) the prejudicial nature of the comments, *Reeves v. State*, 118 Tex.Cr.App. 310, 40 S.W.2d 150 (1931); (4) whether the trial judge's comments were justified by the record, *Joshlin v. State, supra* ; and (5) whether the trial judge's comments limited the defendant's rights, *Cartwright v. State, supra.*

In the present case, we shall assume, without deciding, that the trial judge's first comment—"Counsel, I think it is highly improper of you to criticize the jury"—was justified by the appellant's criticism of the jury. Appellant, however, had every right to object to the trial judge's reply. The trial judge, however, responded to appellant's objection to his (the trial judge's) comment. It was at this point that the trial judge began to abuse his discretion. The trial judge's second comment—"I object to your manner of argument. You shouldn't tell the jury  .  .  ."—was retaliatory in nature. The trial judge should have removed the jury before he continued his response to appellant's objection.

Furthermore, appellant again properly objected. The trial judge again retaliated by stating that, "You've been objecting all through the trial. I object to your conduct, too." This could not but convey an unfavorable impression to the jury.

Again the appellant objected, and again the trial judge commented in response to the appellant's objection. This, the fourth comment by the judge in the colloquy, did instruct the jury not to hold counsel's conduct against the appellant. However, it also interjected the behavior of counsel from past cases into the trial. This was completely unnecessary and served no legitimate end.

The appellant likewise objected to the trial judge's fourth comment and the trial judge responded with his fifth and final comment: "All right. Get on with your argument. I'm getting tired of listening to you." This admonition was unnecessary and could not but convey the impression that appellant's final argument lacked merit.

Thus, with the exception of the first comment by the trial judge, four comments were made by the trial judge in response to proper objections by appellant. Therefore, it is clear that the judge's comments were not in response to appellant's failure to observe the prior rulings of the judge or rules of evidence and that appellant did properly object.

Moreover, these objections contained nothing to warrant the responses made by the trial judge.[1] As stated in *Hampton v. State*, 120 Tex.Cr.R. 158, 46 S.W.2d 314, 315 (1932):

"The judge on the bench cannot too scrupulously refrain from the very appearance of partiality. He is for neither side in any litigation. The State has its officers to look after its interests in any case. Without bias or prejudice the judge should rule as the law commands, blind alike to friend and foe."

Furthermore, the trial judge's comment could only have prejudiced the minds of the jurors. After all, "[T]he influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.'" *Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933).

I cannot conclude that the trial judge's comments were necessary to properly control and conduct the trial. The trial judge should have removed the jury if he wanted to admonish appellant's counsel in the manner he did. The trial judge's failure to do so constituted reversible error.

II.

I would also reverse this case on the basis of the prosecutor's final argument. The record reflects the following:

"MR. NOBLE: Ladies and gentlemen, I think you have seen something. I'm not attacking the attorney. I think I need to point some things out to you. You know you saw that older man up here. You saw him pick out pictures that did not belong to those two men over there. If you want to leave it at that, that's fine. You know, there just might be a reason that he does that on this witness stand and he may perhaps just doesn't do that when Mr. Zimmermann is not around. I suggest to you that it is a reasonable deduction from the evidence that Mr. Zimmermann can intimidate Mr. Till. He can intimidate me. He can intimidate the Judge. He can intimidate just about anybody he wants to.

Now, it's a reasonable deduction—

"MR. ZIMMERMANN: Your Honor, I object to this lawyer attacking Robert Andrew through his attorney.

1. Also, continued judicial comments in response to proper objections by defense counsel directed at judicial comments may prove to have a chilling effect upon defense counsel's willingness to actively represent his case. Judicial conduct directed at *legitimate* defense tactics, if it affects defense counsel's conduct during trial, may operate to deprive defendant of effective assistance of counsel. I cannot condone any unnecessary and excessive judicial action that impinges upon the rights of a defendant to be represented zealously by his attorney.

"THE COURT: Overrule your objection.

"MR. ZIMMERMANN: Judge, the Court is not saying by overruling my objection that I intimidated the Court.

"THE COURT: No, sir, I'm not. I'm not intimidated.

"MR. ZIMMERMANN: Thank you."

In *Alejandro v. State,* 493 S.W.2d 230 (Tex.Cr.App.1973) we delineated the proper scope of jury arguments as: (1) summations of the evidence; (2) reasonable deductions from the evidence; (3) answers to arguments of opposing counsel; and (4) plea for law enforcement. The prosecutor's argument fails to comply with the requirements of *Alejandro, supra.*

It is well established that prosecutorial arguments which personally attack defense counsel in an effort to inflame the minds of the jury and prejudice the defendant are not consistent with due process. *Summers v. State,* 147 Tex.Cr.R. 519, 182 S.W.2d 720 (1944); *Crutcher v. State,* 481 S.W.2d 113 (Tex.Cr.App.1972); *Lopez v. State,* 500 S.W.2d 844 (Tex.Cr.App.1973).

In *Anderson v. State,* 525 S.W.2d 20, 22 (Tex.Cr.App.1975), we were confronted with the following argument by the prosecutor:

"PROSECUTOR: See, you can think about that, ladies and gentlemen. He doesn't want you to think about it. *He wants to pull the wool over your eyes, but you can think about it. He won't argue the law, and he won't argue the facts; all he will do is get up here and lie.*" (Emphasis added)

We there held that the argument was so prejudicial that it would have been remedied only if the trial judge had granted the mistrial requested by the defendant.

In *Crutcher v. State, supra,* we were confronted with the following argument by the prosecutor: [2]

"I'd sort of hoped Mr. Bruner [defense counsel] would stay with us in the courtroom . . . but I can assure you one thing, that wherever he has gone, he is not down on his knees praying to his God. I can assure you that . . .."

We there held that arguments like the one involved in that case should not be condoned.

*Anderson* and *Crutcher* are to some degree distinguishable from the argument involved in the present case. Unlike *Anderson,* the prosecutor here did not call appellant's counsel a liar, and unlike *Crutcher* the prosecutor did not attack the religious beliefs and/or practices of appellant's counsel. However, the prosecutor's argument was clearly aimed at informing the jury that appellant's counsel had intimidated a witness, the prosecutor, the trial judge and " . . . just about anybody he wants to." It is obvious that the prosecutor was attempting to inform the *jury* that he thought that appellant's counsel was attempting to intimidate *them.* Like the arguments in *Anderson* and *Crutcher,* the argument was manifestly improper and harmful.

Prosecutorial comments on the intensity and method of defense counsel's cross-examination and defensive tactics should not be tolerated by this Court. If arguments of this nature are permitted, final arguments may be transformed into a forum where counsel for the State and the defense attack one another in an effort to influence the jury's decision.[3]

More importantly, any sanction of prosecutorial arguments on defensive tactics and

---

**2.** This argument occurred immediately after one of the defendant's attorneys momentarily left the courtroom after completion of his argument.

**3.** This, of course, would be completely incompatible with due process. Moreover, Sec. 5.9(d) of the ABA's Standards Relating to the Prosecution, and 7.8(d) of the ABA's Standards

Relating to the Defense Function, Approved Draft, 1971, state:

"A [prosecutor] [lawyer] should refrain from argument which would divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury's verdict."

methods may very well have a chilling effect upon vigorous cross-examination.

If prosecutors can openly comment on forceful advocacy of their opponents and imply that forceful advocacy is not proper, then due process has certainly become a meaningless concept.

For the foregoing reasons, I concur not only with the majority's opinion on rehearing, but would reverse the cause and remand for a new trial.

PHILLIPS, J., joins in this concurrence.