**Roger Glenn COOK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 51560.**

Court of Criminal Appeals of Texas.

June 9, 1976.

---

1. The record reflects that an earlier trial of appellant for this offense had ended with a hung jury.

George Michael Jamail, Beaumont, for appellant.

Tom Hanna, Dist. Atty., and Jimmie R. Stanton, Asst. Dist. Atty., Beaumont, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

In a trial before a jury, appellant Roger Glenn Cook was convicted of possession of heroin, a controlled substance. Punishment was assessed at seven and a half years.

On the night of September 26, 1973, Billy Broadway, acting night manager of a 7–11 grocery store in Port Arthur, observed appellant and his companion, Harry Cook, steal several packages of pressed ham from the meat cooler. After paying for other groceries, but not for the meat which was concealed in appellant's pants, the two men left in a car. When Broadway again saw the same two men in the store on the night of September 28, 1973, Police Officer Golden in a patrol car was stopped and notified of the theft of September 26. Golden saw appellant and Harry Cook leave the store and enter a car parked by the side of the store and start the motor. Although, as shown by the testimony of Golden, the car belonged to Harry Cook, appellant occupied the driver's seat, with Harry Cook on the passenger's side. Golden asked them for their names, and then by use of his police radio ran an "outstanding warrant" check and learned that there was a warrant for appellant's arrest on a charge of aggravated assault. Appellant was arrested on the charge of shoplifting of the meat and also on the outstanding warrant. Harry Cook was also arrested for shoplifting. The two arrested men were taken to the police station, where they were "booked" for shoplifting of the meat, and appellant was also booked on the outstanding warrant. The car was driven to the "impound garage," connected to the police department.

Officer Golden testified that:

"The department has a policy of anytime we arrest someone, we bring their car to the station and put it in the impound garage and inventory the contents to see if there is any valuable stuff, where we can list it, when the subject gets out of jail and it will be accounted for. It protects the officer and, also, the man's property."

He said this was the mandatory procedure of the Port Arthur Police Department. In pursuance of such policy, after the car was impounded Officer Golden, after listing its license number, color and description, entered it to determine "you know, valuables in it" and inventory them. He saw in clear view in the opened ashtray "in the front part of the car on the dashboard in the center" a brown Anacin bottle, and upon lifting the bottle, he saw a piece of foil rolled up inside it. Recognizing from his experience with such matters that heroin is generally sold wrapped in foil, he made further search of the driver's seat and, underneath it, he found a white paper sack containing a brown bottle with a clear liquid in it, two syringes and some cotton balls. All of these items, as well as others, were listed on his inventory sheet, and turned over to the detective department.

It was stipulated that the rolled foil paper in the Anacin bottle contained heroin.

In his sixth ground of error, appellant complains of certain jury argument of the

prosecuting attorney at the guilt stage. Appellant contends the court reversibly erred in overruling his motion for a mistrial due to such argument.

The record reflects that appellant and Harry Cook were jointly indicted for this offense. Both were represented by the same attorney. When the case was called for trial, the jury panel being present in the courtroom, appellant's motion to sever, to the granting of which the State in open court agreed, was sustained, and appellant alone was placed on trial.

The record reflects the following proceedings during the prosecuting attorney's closing argument at the guilt stage:

"I want you to recall before I start into anything—when you were sitting out there the other day—you were sitting out there and we got ready to pick a jury and there were two people in this courtroom, this defendant and another defendant. You had an opportunity to look at them and you saw them and you saw Mr. Jamail request of the Court a severance so that they be tried separately.

"MR. JAMAIL [Defense]: Your Honor, I object to this. That's a matter of law.

"THE COURT: Overruled.

"BY MR. DOYLE [STATE]:

"And he requested of the Court that a severance be granted. Now, our law is strange in that area. It's unique and in some cases where two people are charged with the commission of the same crime you can't try them both at the same time. That's the way the law reads, and it's a matter of fact. It's something we have to live with.

"Mr. Jamail represents both of those men.

"MR. JAMAIL: Your Honor, I object to that. That's an incorrect statement.

"MR. DOYLE: Your Honor, it's not an incorrect statement.

"THE COURT: Overruled.

"BY MR. DOYLE:

"He was here and answered for both of them when the Court called the case.

"MR. JAMAIL: Your Honor, may I approach the bench?

"THE COURT: Yes, counsel.

"(At this point there was an off-the-record discussion at the Bench between the Court and counsel, after which time the following proceedings took place, as follows, to-wit:)

"THE COURT: Overruled.

"MR. JAMAIL: Note my exception to that.

"BY MR. DOYLE:

"I hope you see what's going on. If you don't, justice is blind. I can assure you of that, because this is a classic example of trickery. It is a procedural manner—

"MR. JAMAIL: Your Honor, I object to this strenuously. He's arguing outside the Record. This had nothing to do with the evidence.

"THE COURT: Yes. Disregard the word 'trickery.'

\* \* \* \* \* \*

"BY MR. DOYLE:

"I want you to imagine what Mr. Jamail is going to say when we try Harry Cook.

"MR. JAMAIL: Your Honor, this is pure speculation—

"MR. DOYLE: 'It's him.'

"MR. JAMAIL: Your Honor, there's no— it's pure speculation. Harry Cook might come in here and plead guilty.

"THE COURT: That's not the question before the jury.

"BY MR. DOYLE:

"Well, the old way of doing it is to blame it on the other guy. He blames it on Harry and Harry blames it on him, and hopefully, they can convince two juries of Jefferson County citizens that the other guy did it, and they both walk out of here laughing. Now, that's what it's about, and that's what you've got, and that's why you've got a severance in this case. That's what you're looking at.

"MR. JAMAIL: Your Honor, may I approach the Bench?

"(At this point the following proceedings took proceedings took place at the Bench, OUT OF THE HEARING of the jury, as follows, to-wit:)

"MR. JAMAIL: 'Now comes the defendant Roger Cook, by and through his attorney Michael Jamail, and moves the Court to declare a mistrial in this matter based on the State's counsel's continued reference to a severance and to the fact that I represent the other person named Harry Cook, and that the same argument to defend Roger Cook will be used to defend Harry Cook. Furthermore, counsel has implied and inferred that Roger Cook could have taken the stand or that Harry Cook could have taken the stand and this is violation of the defendant's Motion in Limine as granted and approved by the Court.'

"Respectfully submitted.

"THE COURT: Motion denied.

"MR. DOYLE: Thank you, Your Honor."

 Appellant had a legal right to file a motion for severance (see Art. 36.09, V.A. C.C.P.), which was recognized by the State when it agreed that the motion should be granted, and by the court when it granted the severance. As noted above, when, in his argument, the prosecutor first began to criticize defense counsel for requesting the severance, appellant's objection was overruled. There is nothing in the record to justify or condone the State's subsequent criticism of the filing of the motion to sever, or the prosecutor's attempt to inflame the minds of the jurors against appellant and his attorney by designating it as "a classic example of trickery." The court's instruction that the jury "disregard the word 'trickery'" did not remove the harm done, in view of the prosecutor's continued remarks on the subject. See *Anderson v. State,* 525 S.W.2d 20 (Tex.Cr.App.); *Lopez v. State,* 500 S.W.2d 844 (Tex.Cr.App.); *Bray v. State,* 478 S.W.2d 89 (Tex.Cr.App.).

Neither the appellant nor Harry Cook testified before the jury. The prosecutor was wholly outside the record in giving his version of what the severance was about and in stating to the jury "and that's why you've got a severance in this case." The severance in this case was had because appellant filed his motion, the State agreed, and the court granted it. In view of the failure of appellant and Harry Cook to testify, there was no evidence to support the prosecutor's prediction as to what Harry Cook's defense would be or what counsel would say on the trial of Harry Cook. The State's argument along the above stated lines was a clear effort to inflame the minds of the jurors against appellant and his counsel.

Neither was the State's argument made in reply to that of defense counsel. The case was submitted to the jury on the law of circumstantial evidence. A review of the argument of defense attorney reflects that it was based on what counsel considered the lack of sufficient evidence to prove that appellant knowingly had the heroin in his care, custody, and control.

We quote as follows from our opinion in *Anderson v. State,* supra (p. 22):

" . . . . The prosecutor's statement that defense counsel was trying to pull the wool over the jurors' eyes, that he will not argue the law, and that he will not argue the facts, but that 'all he will do is get up here and lie to you,' was of such a nature that when it was made, and in the context of the prosecutor's argument which has been quoted, could have only been remedied by granting the request for mistrial. See *Lopez v. State,* 500 S.W.2d 844 (Tex.Cr.App.1973); *Crutcher v. State,* 481 S.W.2d 113 (Tex. Cr.App.1972); *Bray v. State,* 478 S.W.2d 89 (Tex.Cr.App.1972); *Dykes v. State,* 168 Tex.Cr.R. 215, 325 S.W.2d 135 (1959). Cf. *Edmiston v. State,* 520 S.W.2d 386 (Tex. Cr.App.1975). The prosecutor's conduct denied the appellant a fair trial. See *Ruth v. State,* 522 S.W.2d 517 (Tex.Cr. App.1975); *Boyde v. State,* 513 S.W.2d 588 (Tex.Cr.App. 1975); *Renn v. State,* 495 S.W.2d 922 (Tex.Cr.App.1973); *Stein v. State,* 492 S.W.2d 548 (Tex.Cr.App. 1973)."

The argument quoted in the foregoing excerpt from *Anderson* was held to consti-

tute reversible error even though the trial court had sustained defendant's objection, and had instructed the jury to disregard.

Under the circumstances of this case, and the continued reference to the severance, we find inapplicable the doctrine of *Vela v. State,* 516 S.W.2d 176 (Tex.Cr.App.), and authorities there cited, which holds that without a timely and specific objection being made in addition to the motion for a mistrial, error is not preserved. *Clanton v. State,* 528 S.W.2d 250 (Tex.Cr.App.); *Clayton v. State,* 502 S.W.2d 755 (Tex.Cr.App.).

The instant case was submitted on the law of circumstantial evidence. The State, to establish knowing care, control and custody of the heroin, relied strongly on the evidence showing that appellant, although not the owner of the car, occupied the driver's seat after leaving the 7–11 store, the bottle containing the heroin was in plain view in the open ashtray of the dashboard, and narcotic paraphernalia was found under the driver's seat. Under the circumstances we do not conclude that the error in the State's argument was harmless.

The judgment is reversed and the cause is remanded.

Opinion approved by the Court.