Affirmed in Part and Reversed and Remanded in Part an Majority and
Dissenting Opinions filed November 20, 2003









Affirmed in Part and Reversed and Remanded in Part an
Majority and Dissenting Opinions filed November 20, 2003. 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS. 14-02-00193-CR

           14-02-00194-CR

           14-02-00195-CR

____________

 

ROBERT PHILLIPS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 228th
District Court

Harris County, Texas

Trial Court Cause Nos. 881466,
881467, 881468 

 



 

M A J O R I T Y   O P
I N I O N








A jury found appellant guilty of three counts of sexual
assault of a child, and sentenced appellant to ten years= confinement in the Texas
Department of Criminal Justice, Institutional Division and a $5,001.00 fine for
each count.  In nine issues on appeal,
appellant complains that the trial court erred (1) by refusing to grant a
mistrial even though a witness had mentioned an extraneous offense, (2) by not
requiring the State to elect a specific transaction, (3) by refusing to grant a
mistrial on the basis of improper jury argument, and (4) by refusing to grant a
mistrial because the State improperly commented on appellant=s right to a jury trial.  We affirm in part and reverse in part.  For two of the indicted offenses, we reverse
because we conclude the trial court committed harmful error in not requiring
the State to elect which offenses it was relying on for conviction.  For the third indicted offense, we affirm
because the State presented specific testimony of only one occurrence; on this
count, the State was not required to elect.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant initially hired the fifteen-year-old complainant
to teach him English and to help him with his business.  While they were working together, appellant
sexually assaulted the complainant; this sexual activity continually escalated
for months.  On March 10, 2000, appellant
took the complainant to a hotel room where they engaged in sexual
activity.  The complainant eventually
told her mother of the activity, and her mother notified the police.

The State charged appellant with three counts of sexual
assault of a child.  The jury found
appellant guilty of all three counts.  

DISCUSSION

Appellant raises nine issues on appeal.  In his first issue, appellant contends the
trial court erred when it refused to grant his motion for a mistrial based on a
witness=s comment about an extraneous
offense.  Combined in the second, third,
and ninth issues, appellant argues the trial court failed to compel the State
to elect which transaction it would rely upon for conviction.  In the fourth, fifth, seventh, and eighth issues,
appellant complains that the trial court erred when it refused to grant a
mistrial because of the State=s improper jury arguments.  Finally, in the sixth issue, he asserts the
trial court erred when it refused to grant a mistrial because the State
improperly commented on appellant=s right to a jury trial.








I.        IMPROPER
COMMENT ON EXTRANEOUS OFFENSE

First, appellant argues the trial court erred by not
granting him a mistrial when the complainant mentioned an extraneous
offense.  At appellant=s request, the trial court
instructed the jury to disregard the statement. 
Nonetheless, he claims a mistrial was warranted.  We review a trial court=s denial of a mistrial under an
abuse of discretion standard.  Ladd v.
State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), cert.
denied, 529 U.S. 1070 (2000). 

An instruction by the trial court to disregard improper
testimony will usually cure error.  Campos
v. State, 589 S.W.2d 424, 428 (Tex. Crim. App.
1979); Zataraus v. State, 666 S.W.2d
294, 296 (Tex. App.CHouston [14th Dist.] 1984, no
pet.).  When the trial court instructs a
jury to disregard, we presume the jury follows the trial court=s instructions.  See Waldo v. State, 746 S.W.2d 750,
752B53 (Tex. Crim.
App. 1988).  However, if the error is
extremely prejudicial and cannot be withdrawn from the juror=s minds, the trial court should
declare a mistrial.  See Lusk v. State,
82 S.W.3d 57, 60 (Tex. App.CAmarillo 2002, pet. ref=d).  Accordingly, a mistrial is only appropriate
when the event is Aso emotionally inflammatory
that curative instructions are not likely to prevent the jury from being
unfairly prejudiced against the defendant.@  Id. at 60; see also Shepherd v. State,
915 S.W.2d 177, 179B80 (Tex. App.CFort Worth 1996, pet ref=d) (holding a repeated comment
on defendant=s failure to testify warranted
mistrial).  

Here, when the State questioned the complainant about
specific acts, she alluded to an extraneous offense by appellant.  She stated, in part, the following:

[The State]:                      All right. At some point
14 months later, 15 months later, 16 months later, around May of 2001, did you
finally tell your mom?

[The Complainant]:           I finally told my mother after my
sister confessed of something.

[Defense Attorney]:          I
will ask that last statement be stricken and the jury be instructed to
disregard.  May we approach the bench,
Your Honor?








Outside the jury=s presence, appellant=s counsel requested a
mistrial.  The trial court denied the
mistrial, but instructed the jury to disregard the last question and the last
answer.[1]

First, we do not find that the comment obviously refers to
an extraneous offense.  But even if it
did refer to an extraneous offense, the remark was inadvertent and isolated.[2]  Moreover, the single reference to any
possible activity between appellant and the complainant=s sister was not Aso emotionally inflammatory@[3] that the trial court=s instruction to disregard did
not cure all error.  See Lusk, 82
S.W.3d at 60.  Given the vague nature of
the comment, the trial court did not abuse its discretion in denying appellant=s motion for a mistrial.  See Ladd, 3 S.W.3d at 567.  We overrule appellant=s first issue.

II.       FAILING TO
ELECT A TRANSACTION FOR EACH OFFENSE

In issues two, three and nine, appellant complains that the
trial court committed reversible error when it failed to require the State to
elect which transaction it would rely upon for each of the three indicted
offenses.  As to two of the indicted
offenses, we agree that the trial court erred by not requiring the State to
elect the transaction, and that the error was harmful.  As to the third indicted offenseCthe penetration of the
complainant=s mouth with a sexual organCwe find no error.

A.      Legal Premises
Underlying the Election Requirement. 








The general rule is Awhere one act of intercourse is
alleged in the indictment and more than one act of intercourse is shown by the
evidence in a sexual assault trial, the State must elect the act upon which it
would rely for conviction.@  O=Neal v. State, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988). 
Before the State rests, the trial court has discretion in directing the
State to make an election.  See
id.  AHowever, once the State rests
its case in chief, in the face of a timely request by the defendant, the trial
court must . . . order the State to make its election.  Failure to do so constitutes error.@  Id. at 772; see also Crosslin v. State, 90 Tex. Crim.
467, 235 S.W. 905 (1921).

Case law has given four reasons for the rule: 

$                  
to
protect the accused from the introduction of extraneous offenses, see Fisher
v. State, 33 Tex. 792, 794 (1870);

$                  
to
minimize the risk that the jury might choose to convict, not because one or
more crimes were proved beyond a reasonable doubt, but because all of them
together convinced the jury the defendant was guilty, see id. (AThe jury may have taken both
[offenses] into account, and have considered that one or the other was not
sufficiently made out to warrant a conviction, but that both together convinced
[it] of the guilt of the defendant. . . .@);

$                  
to ensure
unanimous verdicts, that is, all of the jurors agreeing that one specific
incident, which constituted the offense charged in the indictment, occurred, see
Francis v. State, 36 S.W.3d 121, 123B25 (Tex. Crim.
App. 2000); and 

$                  
to
give the defendant notice of the particular offense the State intends to rely
upon for prosecution and afford the defendant an opportunity to defend.  See O=Neal, 746 S.W.2d at 772B73. 

See also Dix and Dawson, Texas Practice, Criminal Practice and
Procedure, Election Among Transactions, AOffenses,@Acts, or Incidents, vol. 42, '' 30.52B30.60, pp. 664B687 (2d ed. 2001).

The State admits the trial court erred by not requiring the
State to elect an act and a date, and as to two of the indicted offenses, we find
the trial court did err by not instructing the State to elect a
transaction.  See id.  Having found that the trial court erred, our
next task is to determine whether the error was harmful.  Two problems complicate that review, which we
will address in turn.








B.      Complaint Not
Waived by Giving a Bad Reason for Wanting an Election.

The first complicating fact is that on appeal, appellant
gives a different reason for wanting the election than he gave the trial
court.  At trial, appellant advanced
double jeopardy concerns as his reason for seeking an election.[4]  But, on appeal, appellant contends that the
State=s failure to elect precluded
him from establishing an alibi defense. 
In spite of this disparity between the complaint at trial and the
complaint on appeal, we hold that appellant did not waive his complaint that
the court should have required the State to elect a transaction for the three
offenses.[5]  

To preserve a complaint for appellate review, a defendant
must make a timely request, objection, or motion that specifically states the
grounds for the requested ruling.  Tex. R. App. P. 33.1(a)(1).  AAn objection stating one legal
basis may not be used to support a different legal theory on appeal.@  Jensen v. State, 66 S.W.3d 528, 536
(Tex. App.CHouston [14th Dist.] 2002, pet
ref=d).  








Although appellant advances a different reason for wanting
an election on appeal than he advanced at trial, the legal basis for his motion
remained the same: he wanted the State to elect the offenses it would rely on
for conviction.  The trial court was not
denied an opportunity to rule on whether to require the election.  The election was mandatory, regardless of the
stated reason.  See O=Neal, 746 S.W.2d at 772 (A[O]nce
the State rests its case in chief, in the face of a timely request by the
defendant, the trial court must . . . order the State to make its
election.@).  In fact, for the State to be required to
elect, the defendant only needs to ask for an election; he need not state why
he wants it.  See id.  The reason for wanting it does not
matter.  On this issue, the trial judge
should not have any question; when an election is requested in the right type
of case, an election is mandatory.  See
id. 

C.      The Failure to
Require An Election is Constitutional.

Having concluded that appellant can raise a new reason on
appeal for wanting an election, we turn to the next complicating factor of our
review, and that is, whether the error is constitutional or
non-constitutional.  We find the case law
from the court of criminal appeals unclear on this issue, and the intermediate
appellate case law, although clear on what type of error it is, is unconvincing
and inadequate as to why the courts have held that the error is
non-constitutional or constitutional.  

Two Courts of Appeals have held that any error in failing to
require the State to elect is non-constitutional in nature.  See Cates v. State, 72 S.W.3d 681, 696B97 (Tex. App.CTyler 2001, no pet.); Wilson
v. State, 3 S.W.3d 223, 226 (Tex. App.CWaco 1999, pet. ref=d).  We respectfully disagree.

The analysis in Wilson was based on a decision by the
Court of Criminal Appeals in Garcia v. State regarding the
specificity of the date in an indictment. 
Wilson, 3 S.W.3d at 226. 
In Garcia, the Court of Criminal Appeals held that failing to
specify in an indictment the precise date on which the charged offense occurred
is not constitutional error.  Garcia
v. State, 981 S.W.2d 683, 686 (Tex. Crim. App.
1998).  Relying on this decision, the Wilson
court Aconclude[d] that a failure to
require an election by the State is not an error of constitutional dimension.@  See Wilson, 3 S.W.3d at 226.  Unlike the Wilson court, we believe Garcia
is irrelevant to the issue now before us. 

Three reasons were advanced in Garcia as to why the
failure to specify a precise date in the indictment was not constitutional:








First, time is not a material
element of an offense (at least, not usually). 
Second, the primary purpose of specifying a date in the indictment is
not to notify the accused of the date of the offense but rather to show that
the prosecution is not barred by the statute of limitations.  Third, it may be impossible for the State to
know precisely, or even approximately, when the charged offense occurred.

Garcia, 981 S.W.2d at 686 (internal citations omitted).  

None of these reasons apply to the failure to elect.  First, the identity of the offense charged is
clearly a material element of that offense. 
Second, the purpose of election in a case like this, in which multiple
offenses may have occurred, is to notify the defendant of the offense with
which he is charged, to allow him to prepare a defense, and to obtain a
unanimous verdict on the offense chargedCnot to satisfy the statute of
limitations.  Third, by the time the case
goes to the jury and the State knows what evidence is before the jury, the
State is required to choose the offense for which it is asking the jury to
convict.  By this time, a date is
important.  By this time, the State must
identify with sufficient specificity the offense on which it relies for
conviction so that the jury will know with certainty which offense the State is
alleging the defendant committed.  Thus,
we disagree that Garcia is reason for holding that this error is
non-constitutional.

Unlike the Cates and Wilson Courts, the Austin
Court of Appeals, in Gutierrez v. State, held that the right to require
the State to elect is constitutional in nature. 
Gutierrez v. State, 8 S.W.3d 739, 747B48 (Tex. App.CAustin 1999, no pet.).  Although the Gutierrez court does not
say the failure to elect is a constitutional error, the cases cited, and its
description of them, certainly indicate that the court believed the error was
constitutional in nature:  A[A] person cannot incur the
loss of liberty for an offense without notice and a meaningful opportunity to
defend,@ citing Jackson v. Virginia,
443 U.S. 307, 314 (1979); and ANo principle of procedural due
process is more clearly established than that notice of the specific charge,
and a chance to be heard in a trial of the issues raised by that charge, if
desired, are among the constitutional rights of every accused in a criminal
proceeding in all courts, state or federal,@ citing Cole v. Arkansas,
333 U.S. 196, 201 (1948).  See
Gutierrez, 8 S.W.3d at 747B48.













We think the answer may depend on the reason an election is
required, which may vary from case to case. 
Returning to the four reasons for requiring election, we think it most
likely that the Court of Criminal Appeals would say that election is required
(1) to ensure a unanimous verdict and (2) to give notice of the particular
offense charged, and, in some cases, as here, there may be the additional
reason that (3) the jury might tend to convict, not because it found beyond a
reasonable doubt that each of the offenses was committed, but because it was
convinced of guilt because of the sheer number of alleged incidents.  If the reason underlying the requirement is
unanimity, it appears that the error is constitutional in nature.  See Francis v. State, 36 S.W.3d 121,
123B25 (Tex. Crim.
App. 2000) (finding error because it was possible that six members of the jury
convicted appellant on one sexual offense and six convicted him of another
sexual offense).[6]  If the reason underlying election is notice,
as stated in O=Neal, we agree with the Gutierrez
court that federal case law seems to support a conclusion that adequate
notice and a meaningful opportunity to defend are constitutional in nature.[7]  See O=Neal, 746 S.W.2d at 772; Gutierrez,
8 S.W.3d at 748.  If the reason is to
avoid the danger that the jury convicted based on the sheer frequency of
incidents rather than on evidence that convinced the jury beyond a reasonable
doubt that the defendant actually committed the offense, that, too, would seem
to be constitutional in nature.  As we
discuss in more detail below, all three reasons apply here.[8]  As a result, we conclude that appellant=s right to require the State to
elect was a right of constitutional proportions and we will apply error
analysis used for constitutional error.  See
Tex. R. App. P. 44.2(a).

Using the constitutional error standard of review, we must
reverse unless we find beyond a reasonable doubt that the error did not
contribute to the conviction.  Id.  If the State fails to elect, but the evidence
presented clearly indicates which specific incident the State is relying on,
the error is not harmful.  Compare O=Neal, 746 S.W.2d at 772B73 (finding error was harmless
because A[b]y the close of the State=s case, it was clear that the
act upon which the State would rely for conviction occurred on April 24, 1984@), with Wilson, 3 S.W.3d
at 227 (finding error was harmful because Athe State=s evidence . . . points to two
particular incidents for which the jury could have found [the defendant] guilty
and innumerable other instances which [the complainant] generally described for
which the jury could have found [the defendant] guilty@).[9]  

D.      On Two of the
Indicted Offenses, Error was Harmful.








For two of the offensesCdigital and oral penetration of
the female sexual organCwe do not know the occurrence
the jury relied on to convict.  Numerous
offenses were presented.[10]  The testimony was relatively clear about the
first time each type occurred, and that these occurred at appellant=s apartment.  But, after these first instances, both
occurred numerous times, always at appellant=s apartment.  Generally, no specific dates were given, and
sometimes the occurrences were not even identified by month; it does, however,
appear that they may have occurred weekly, although the record is slightly
unclear even on this point.[11]  A second date also stands out because the
minor complainant testified that these two offenses occurred at a motel; a
receipt was introduced into evidence to prove that appellant and the
complainant went to the motel.  Clear
testimony was presented that both types of penetration occurred at the
motel.  Thus, clear testimony exists for
two specific occurrences of both digital and oral penetration, along with
further vague testimony that they often occurred.

When closing arguments were made, the State did not refer to
any specific incidents or offenses.  Not
once did it point to a date or time or place where even one offense
occurred.  Instead, the State spent its
time pointing out that appellant=s defense was unbelievable and
that the defense strategy was to vilify the complainant.  








Thus, both offenses were described in detail more than once;
yet, it was completely unclear to the jury which act the State would rely upon
for conviction.  Cf. O=Neal, 746 S.W.2d at 772B73 (finding error harmless
because the evidence clearly indicated which act the State would rely
upon).  This would have allowed the jury
to convict, (1) because of the sheer number of offenses and not because any one
was proven beyond a reasonable doubt, or (2) because some of the jurors relied
on one offense and others relied on another. 
Under either scenario, the error was harmful, and we cannot say beyond a
reasonable doubt that either of these did not occur.[12]  

E.      On One Indicted
Offense, There was No Error.

On the third offenseCpenetration of the minor=s mouth by defendant=s sexual organCwe find no error.  On this offense, the complainant testified
about only one occurrence.  When only one
occurrence is presented, the State cannot elect; in that situation, there are
not multiple offenses from which to elect. 
See O=Neal, 746 S.W.2d at 771.

III.      IMPROPER JURY
ARGUMENTS

Next, appellant complains that the trial court erred in not
granting a mistrial based on arguments the prosecutor made in his closing.  The trial court cured any error as to two of
the improper arguments by instructing the jury to disregard them.  The last two arguments were improper, and
before the jury without any instruction, but we find the error harmless.

Proper jury argument must fall within one of four areas: (1)
summation of the evidence; (2) reasonable deduction from the evidence; (3)
answer to opposing counsel=s arguments; or (4) a plea for
law enforcement.  Brandley
v. State, 691 S.W.2d 699, 712 (Tex. Crim. App.
1985).  Improper closing arguments
include references to facts not in evidence or incorrect statements of law.  Parks v. State, 843 S.W.2d 693, 695 (Tex.
App.CCorpus Christi 1992, pet. ref=d).  For an improper jury argument to mandate
reversal, it must be extreme, violate a mandatory statute, or inject new facts
into the record.  Brandley, 691
S.W.2d at 712B13.








When a prosecutor makes uninvited and unsubstantiated
accusations of improper conduct directed toward a defendant=s attorney, in an attempt to
prejudice the jury against the defendant, courts refer to this as striking a
defendant over the shoulders of his counsel. 
See Gomez v. State, 704 S.W.2d 770, 771B72 (Tex. Crim.
App. 1985).  This can be seen, for
example, when the prosecutor argues that defense counsel has manufactured
evidence, suborned perjury, accepted stolen money, or represented criminals.  See Washington v. State, 822 S.W.2d
110, 119 (Tex. App.CWaco 1991), rev=d on other grounds, 856 S.W.2d 184 (Tex. Crim. App. 1993); see also Wilson v. State, 938
S.W.2d 57, 58 (Tex. Crim. App. 1996) (finding the
statement A[defense counsel] wishes . . .
that you turn a guilty man free . . . because he doesn=t have the obligation to see
that justice is done@ was improper); Anderson v.
State, 525 S.W.2d 20, 21B22 (Tex. Crim.
App. 1975) (finding the State struck over the shoulders of the defense when the
State accused the defense attorneys of lying). 
Generally, a trial court cures any error from an improper jury argument
when it instructs the jury to disregard the comment.  See Wilkerson v. State, 881 S.W.2d
321, 327 (Tex. Crim. App. 1994). 

Appellant contends the following comments by the State
struck at him over the shoulders of his counsel: 

1.       AI am not going to talk very long, and
I=ll basically leave you with a couple
things I would ask you to think about in good heartCgood heartedly while they get up and
talk to you for about 30 minutes, and that is this.  First, there are hours and hours of needless,
miserable, hopeless and pathetic pecking at the State=s case.@

2.       AWhere do I start?  You know, if a man is caught in a trap he
steps in it, didn=t see it coming. . . . He may bark and
cry, chew on the tree, chew his own paw off, chew through the chain,
whatever.  He will do anything.  And it may be a crude comparison but if you
think hard about it, good and hard about it, it=s not unlike this case that you have
here.  Because when you=re caught you do everything in your
power to get out.  You have your lawyers
make personal attacks on me, you get up and make ten-minute speaking
objections, youC@

3.       ACshe=s got to get it again when she came in
here.  They nailed her up on a cross,
they called her whore, they called her a dream girl, they called her a liar.@








4.       AArmed with that awesome ability
to do right what are you going to do? 
Are you going to validate the most lame, ridiculous, self-serving,
pathetic story from him, the guy who while he testified did not have the guts
to look you in the eye?  Are you going to
believe a 15, 16 year old girl, she=s 17 now, who has the courage
to come in here and get nail[ed] to a cross and gutted for no reason.@

Appellant=s attorney properly objected to
all four statements.  The trial court
sustained appellant=s objection to the first two
statements, instructed the jury to disregard, and denied the motions for
mistrial.  The trial court overruled
appellant=s objections to the last two
statements.  We will discuss separately
the first two statements for which the jury received an instruction to
disregard, from the last two statements for which the jury did not.

A.      Arguments with
an Instruction to Disregard.

In most instances, an instruction to disregard an improper
jury argument will cure any error.  Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). 
Only offensive or flagrant error will mandate reversal after a trial
court=s instruction to
disregard.  Id. at 116.  Here, the trial court quickly sustained
appellant=s two objections and instructed
the jury to disregard the State=s comments.  Although error, the comments were not so
highly inflammatory that a jury could not ignore them.  Garcia v. State, 943 S.W.2d 215, 217
(Tex. App.CFort Worth 1997, no pet.)
(holding that when assessing the curative effect of a statement, the correct
inquiry is whether or not the statement was so inflammatory than an instruction
to disregard could not cure its prejudicial effect).  Since the record shows no evidence to the
contrary, we assume the jury followed the trial court=s instruction to
disregard.  See Gardner v. State,
730 S.W.2d 675, 696 (Tex. Crim. App. 1987), cert.
denied, 484 U.S. 905 (1987). 
Therefore, the trial court cured any error, and we overrule these two
issues by appellant.

B.      Arguments
without an Instruction to Disregard.








We now address the State=s last two comments that did
not receive an instruction to disregard. 
Practically speaking, it is impossible to articulate a precise rule to
determine when a prosecutor is striking over the defense counsel=s shoulders and when he is
making a proper jury argument.  However,
we find that parts of the State=s argumentsCAnailed her up on a cross,@ Anail[ed] to a cross,@ and Acalled her whore@Cwere improper and probably did
strike at appellant over his counsel=s shoulders.  That is, the comments were targeted at
defense counsel=s handling of the case, and
were made toward defense counsel personally. 
See Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). 
Thus, the trial court erred by overruling the appellant=s objections to these two
arguments.  

That means we must determine whether the trial court=s error warrants reversal.  See Tex.
R. App. P. 44.2.  The Texas Court
of Criminal Appeals characterized erroneous rulings regarding improper jury
argument as non-constitutional or Aother error@ within Rule 44.2(b).[13]  Mosley, 983 S.W.2d at 259; Ortiz v.
State, 999 S.W.2d 600, 605B06 (Tex. App.CHouston [14th Dist.] 1999, no
pet.).  Rule 44.2(b) requires us to
examine the error in relation to the entire proceeding to determine whether it
had a Asubstantial and injurious
effect or influence in determining the jury=s verdict.@  See King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997); Ortiz, 999 S.W.2d at
606.  In other words, if we are assured
the error did not influence the jury, or only had a slight effect, we must
affirm the trial court.  See Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998).

In Mosley, the court relied on the following three
factors to analyze the harm associated with improper jury argument and to
determine whether reversal was required: 
(1) the severity of the misconduct (the magnitude of the prejudicial
effect of the prosecutor=s remarks); (2) the measures
adopted to cure the misconduct (the efficacy of any cautionary instruction by
the judge); and (3) the certainty of conviction absent the misconduct (the
strength of the evidence supporting the conviction).  Mosley, 983 S.W.2d at 259.








Thus, we look first at the severity of the comments.  See id. at 259.  As we stated earlier, calling the complainant
a Awhore@ and stating that the defendant
was Anailing her to a cross@ are improper statements.  AWhore@ we find somewhat inflammatory;
and Anailing her to a cross@ is rather inflammatory and the
most capable of inciting emotion.  We
find them moderately extreme. 

Second, the trial court overruled appellant=s objections, so it did not
cure the State=s misconduct.  See id.  But it did minimize their impact somewhat by
instructing the jurors at the time of the objection to decide the case on the
evidence they heard from the witness stand.

Finally, we must look at the certainty of appellant=s conviction absent the
misconduct.  See id.  A good deal of evidence showed that appellant
did in fact sexually assault the complainant. 
A motel receipt confirmed appellant spent a day with the complainant
where he sexually assaulted her.  A
telephone conversation between appellant and the complainant was recorded by
police, in which appellant admitted teaching the complainant about sex and, in
which, in response to her query about when they would have another threesome,
appellant said they would talk about AThe Three Musketeers@ later.  Doctors testified about the physical evidence
linking the assault to appellant.  

Thus, we find the comments to be error.  But, even though improper, even though poor
advocacy, they are not so inflammatory as to require reversal.  And even though the trial judge did not
sustain the objectionCwhich he should haveCwhen the prosecutor said the
inappropriate comment, the trial judge did at least instruct the jurors that
they would decide the case on the evidence they heard from the witness
stand.  It was not as good as instructing
them to disregard.  It was not as good as
reminding them that this was merely argument from lawyers and not
evidence.  But, it was enough to minimize
some of the impact.  And when we consider
the evidence in support of conviction, along with these other considerations,
we cannot conclude that the State=s improper arguments influenced
the jury to find appellant guilty.  The
jury found appellant guilty because of the evidence that came from the witness
stand.

Accordingly, we find the error harmless, and we overrule
these two issues.

 








IV.      ALLEGED
IMPROPER COMMENT ON RIGHT TO JURY TRIAL

Finally, appellant also complains the State improperly
commented on his right to a jury trial. 
The State argued, in part, the following:

[State]:         Now,
let=s go back to it.  It=s like they nailed her up to a
cross and put a crown of thorns on her head and let the birds peck at her.  And it=s no wonder that these cases
don=t get reported.  It=s not only that she had to get
victimized over and over and over by himC

Despite appellant=s timely objection, the trial
court allowed the statement.

As evidenced in our earlier discussion, part of this comment
probably was improper, but it was not a comment on appellant=s right to a jury trial.  See Taylor v. State, 987 S.W.2d 597, 599
(Tex. App.CTexarkana 1999, pet. ref=d).  That is the only objection appellant made to
the comment.  We overrule appellant=s final issue.

                                                   CONCLUSION

In conclusion, all issues other than the election issues are
overruled.  As to election, we overrule
appellant=s issues regarding appellant=s penetration of the complainant=s mouth.  We sustain appellant=s issues as to the digital and
oral penetration of the complainant=s sexual organ, and reverse
those two convictions and remand the cases to the trial court.

 

 

 

/s/      Wanda
McKee Fowler

Justice

 

 

Judgment rendered and Majority
and Dissenting Opinions filed November 20, 2003.

Panel consists of Chief Justice
Brister, Justices Fowler and Edelman (Edelman, J. dissenting).

Publish C Tex. R. App. P. 47.2(b).

 











[1]  The trial
court also instructed the State to again confer with its witness and explain
what evidence she could and could not testify about.





[2]  In fact, the
complainant may have said the last comment so softly that the jury could not
have heard her.  The court reporter
recorded the word Asomething@ and
read that back to the trial court, while the trial court believed the word was Ahim.@  The defense
attorney admitted that the court reporter could barely hear her.





[3]  We do not use
this phrase to imply that an assault on the sister would not impact the jury at
all; we use it only to make the point that no detail was given, we do not know
exactly what the comment referred to, and it was mentioned only briefly.  This is not the type of testimony that
normally would inflame a jury and prevent it from following the court=s instruction.





[4]  Double
jeopardy concern is not a valid reason for wanting an election.  If the State does not elect, it is barred from
prosecuting in the future any offense within the scope of the indictment and
for which evidence was introduced at trial. 
Goodbread v. State, 967 S.W.2d
859, 860B61 (Tex. Crim. App.
1998).  So, theoretically, the defendant
is more protected from prosecution for multiple offenses if the State does not
elect than if it does.





[5]  Nor does the
State appear to contend that appellant waived the argument.  The State appears to argue that the failure
to raise the issue at trial demonstrates appellant=s inability to establish an alibi, not waiver.





[6]  Although Francis
ultimately is not an election caseCthe
appeal dealt with charge issuesCit is still useful. 
In Francis, two different offenses contained in a single
indictment were charged in the disjunctive so that it was possible for part of
the jury to believe that one offense occurred and for part to believe the other
offense occurred and yet still convict. 
The court reversed because it said it was Apossible@ that the jury might not have been unanimous.  See Francis,
36 S.W.3d at 125.  This sounds like constitutional error,
especially since the Court noted earlier in the opinion Athe importance of a unanimous jury verdict.@  Id.  Thus, if one of the reasons for election is
to ensure a unanimous jury, the failure to require election would seem to be
constitutional error.





[7]  O=Neal was
written in 1988 before the current rules for error analysis and therefore does
not apply the analysis used today.  





[8]  Arguably, lack
of notice does not apply here because appellant never claimed below that he
needed an election to help him in establishing an alibi and on appeal; although
he argues this as a reason for reversal, he points to nothing in the record
that would support the claim and he mentions no specifics.





[9]  Although the Wilson
court concluded the error was harmful, that decision was made using the
lesser standard for non-constitutional error. 
See Wilson, 3 S.W.3d at 226. 





[10]  For all the
offenses, the jury received an Aextraneous offense instruction@ informing it that it could not consider any of the
offenses unless it found beyond a reasonable doubt that the defendant committed
them and even then it could consider them only Ain
determining the motive, opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident of the defendant . . . in
connection with the offense . . . alleged in the indictment . . . .@  This
instruction was appropriate, but it did not clear up any confusion on the jury=s part concerning which of the alleged offenses the
State would rely on for conviction.  





[11]  The following
is typical of much of the testimony the complainant gave.

Q.  And now, let=s move
into the summer of 2000 and the fall of 2000. 
Did everything that you=ve discussed, that you told . . . the jury both
yesterday and today, take place like you described?  Did it keep happening?

A.  During the summer, yes it did, somewhat
because we were together.  But when I
found out there was a possibility of going to move we broke up for a small
period of time.

Q. 
Now . . . from the spring and summer of 2000, where did this go on?

A.  Mainly at his house whenever his fiancé or
girlfriend, Amber, wasn=t
around.

 . . . 

Q.  And did . . . what you testified to yesterday
about him placing his finger in your vagina. . . . and his placing his mouth on
your private, did those things continue, aside from the little break points
there[,] in the summer of and fall of 2000?

A.  Yes.





[12]  In fact, on
this record, a traditional harm analysis is essentially impossible.  Appellant
does claim that the failure to elect denied him effective appellate review of
the sufficiency of the evidence, however, he does not raise a separate
sufficiency claim, and, more importantly, he does not cite any authority or
record references to aid us in any review. 
As a result, he has waived this particular claim.  However, this is an
additional reason that the failure to elect can harm a defendant; when an
offense has occurred numerous times, as here, appellate review can be hampered
to such an extent that it is impossible to do. 





[13]  Some improper
jury arguments could be considered constitutional error if the prosecutor=s remarks violated a constitutional issue.  See Ortiz v. State, 999 S.W.2d at 606
n.3; Thompson v. State, 89 S.W.3d 843 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d).