**Affirmed and Memorandum Opinion filed July 16, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00110-CR

**ROBERT LEE DUNN, Appellant,**

**V.**

**THE STATE OF TEXAS, Appellee.**

**On Appeal from the 180th District Court**
**Harris County**
**Trial Court Cause No. 1240900**

## M E M O R A N D U M   O P I N I O N

Appellant Robert Lee Dunn appeals his conviction for sexual assault, arguing he received ineffective assistance of counsel. We affirm.

I

On the evening of November 30, 2008, complainant Maggie[1] was living at a group home for people with special needs. She had been dually diagnosed with mental retardation and bipolar disorder. Dunn's girlfriend, Stephanie Lundy,

---

[1] We have used a pseudonym for the complainant to protect her privacy.

worked as a caretaker at the home.

Shortly after 7:00 o'clock that evening, Sheila Swircynski, Maggie's foster sister, received a call from an attendant at the home who said Maggie wanted to talk to her. Swircynski could hear Maggie screaming and crying in the background, and when Maggie got on the phone, she said that "he hurt her private part and that he put his hand over her mouth." Carolyn Sims, a manager of the group home, took Maggie to Southeast Memorial Hospital for a sexual-assault examination. The lab results from the exam revealed Dunn's DNA on Maggie's underwear as well as on vaginal and perianal swabs taken during the exam. When confronted with this evidence, Dunn admitted that he had sex with Maggie on November 30 but claimed that it was consensual.

At trial, the State attempted to show that Maggie was incapable of consenting, and several witnesses testified about the nature and degree of Maggie's bipolar disorder and mental retardation. The court's charge instructed the jury that a sexual assault is without the consent of the complainant if the defendant "knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it." *See* Tex. Penal Code § 22.011(b)(4). The jury found Dunn guilty of the charged offense, and the trial court assessed his punishment at fifty years' imprisonment in the Texas Department of Criminal Justice, Institutional Division. On appeal, Dunn argues he received ineffective assistance of counsel during each stage of trial.

II

To prevail on an ineffective-assistance claim, an appellant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). To show deficient

2

performance, the appellant must prove by a preponderance of the evidence that his counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. To demonstrate prejudice, the appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694; *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002).

Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional. *Id.* Absent some evidence of counsel's reasons for the challenged conduct, an appellate court will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

III

In his first issue, Dunn claims that his trial counsel was ineffective during voir dire because she failed to object when the trial judge commented on the weight of the evidence and when the prosecutor subsequently echoed the remark.

A trial court must refrain from making any remark calculated to convey to the jury its opinion of the case. Tex. Code Crim. Proc. art. 38.05; *Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003). The trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates disbelief in the defense's position, or

diminishes the credibility of the defense's approach to the case. *Simon v. State*, 203 S.W.3d 581, 590 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Here, Dunn argues the trial court commented on the weight of the evidence by stating, "The State of Texas has accused Mr. Dunn of the criminal offense of sexual assault. Big groan." But the judge went on to say, "If I were to ask for a show of hands how many people are against sexual assault all 65 of you would raise your hand. It's a natural response. But understand this: It is merely an accusation brought by the State of Texas." This was not a comment on the weight of the evidence but rather an effort by the court ensure that Dunn was not unfairly prejudiced by the jurors' negative feelings about the nature of the charged offense. Additionally, the judge's comment did not relate to the specific incident for which Dunn was charged but rather to the offense of sexual assault generally. Therefore, Dunn has failed to demonstrate that his counsel was deficient for failing to object to the trial court's remark because it was not a comment on the weight of the evidence.

Dunn also argues that his counsel was deficient for failing to object when the prosecutor later stated, "the Judge has told you we're here today on a sexual assault case. Grumble, moan." The prosecutor continued, "Nobody really wants to know that that occurs much less have to participate in a process to determine whether or not the offense occurred and what to do about it. So I'm going to go through the law with you and explain to you what I have to prove." Dunn's challenge to these remarks, however, is based on the law prohibiting trial courts from commenting on the weight of the evidence, which does not extend to prosecutors. And further, even if it did, the prosecutor's "Grumble, moan" remark was not a comment on the weight of the evidence; although we do not endorse his choice of words, the prosecutor was merely acknowledging the jury's natural aversion to sexual assault

and did not refer to the specific facts of this case.

Because Dunn has failed to show that the comments made by the court and by the prosecutor were objectionable on that basis, he has also failed to demonstrate that counsel was deficient for failing to object. Accordingly, we overrule his first issue to the extent it relates to counsel's representation during voir dire.

IV

Also within his first issue, Dunn argues that his counsel was ineffective during the guilt–innocence phase because she (1) failed to object to inadmissible testimony, (2) failed to consult with and call a forensic expert, (3) asked questions and elicited responses that bolstered the State's case, (4) conceded Dunn's guilt during her closing argument, (5) failed to object when Maggie made a prejudicial "outburst" during counsel's closing argument, and (6) failed to object to the "highly prejudicial" comments the prosecutor made during the State's closing argument. We address each complaint in turn.

A

We begin with Dunn's argument that his counsel repeatedly failed to object to inadmissible hearsay testimony during trial. When a defendant asserting an ineffective-assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show that the evidence was inadmissible. *Ortiz*, 93 S.W.3d at 93.

Here, Dunn claims that several witnesses' testimony was inadmissible hearsay, *see* Tex. R. Evid. 801, 802, but he fails to demonstrate that the challenged testimony was, in fact, inadmissible. For example, he refers to Sims's testimony that "[t]he incident I was looking into was the alleged rape [Maggie]," and

5

Swircynski's testimony that Maggie had been diagnosed with "[a] behavior disorder and also bipolar." Yet neither witness mentioned an out-of-court statement in this testimony. Dunn further argues counsel should have objected when Betts testified that Maggie calls herself by different names and sometimes says she is 13 years old. Those out-of-court statements, however, were offered to illustrate Maggie's mental capacity, not to prove the truth of the matter asserted.

Dunn also argues that the investigating officer offered "backdoor" hearsay when he testified about being assigned to Maggie's complaint, beginning his investigation, and developing a suspect. Although Dunn cites cases regarding backdoor hearsay, he offers no discussion to support his conclusory assertions that those cases apply here. Moreover, even if Dunn were correct about the admissibility of the evidence, the record is silent as to why counsel did not object, and there may have been strategic reasons for counsel to choose not to object even to inadmissible evidence. *See Thompson*, 9 S.W.3d at 814 (declining to find that representation was either effective or ineffective given lack of explanation in the record for failure to object to hearsay); *McKinny v. State*, 76 S.W.3d 463, 473–74 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (discussing various reasons why criminal defense counsel might strategically decide not to object to inadmissible evidence).

Dunn next argues that Swircynski's testimony was inadmissible hearsay when she described what Maggie said to her on the phone shortly after the offense. The record shows that counsel did object to the first portion of the challenged testimony, the prosecutor argued it was admissible under the excited-utterance exception, and the trial court sustained the objection, advising the prosecutor to "prove it up more" if she was offering the testimony as an excited utterance. Swircynski then testified that Maggie had been screaming, crying, and in an

6

excited state at that time she made the statements. Dunn's counsel then requested permission to approach the bench and challenged whether the prosecutor had offered a sufficient foundation to rely on the excited-utterance exception, but was overruled. On appeal, Dunn does not show that the testimony was not an excited utterance, and he has failed to show that the testimony was inadmissible.

Finally, Dunn argues Swircynski's testimony about Lundy confirming that Dunn had been at the home on the night of the offense was inadmissible hearsay. But assuming without deciding that this testimony was inadmissible, it was clearly not prejudicial because by arguing Maggie consented, Dunn necessarily admitted that he was in the home on the evening of the offense.

Accordingly, because Dunn has not shown that any of the challenged testimony was inadmissible and prejudicial, he has not proven that counsel was deficient for failing to object.[2]

## B

Next, Dunn challenges his trial counsel's failure to consult with and call a forensic expert.

To support a claim of ineffective assistance for failure to investigate, an appellant must show that he had a viable defense that his attorney failed to discover. *Butler v. State*, 716 S.W.2d 48, 54 (Tex. Crim. App. 1986). Further, trial counsel's failure to call a witness at the guilt–innocence stage is irrelevant absent a

---

[2] In a separate but related subsection of his brief, Dunn argues his counsel was deficient for failing at various times to "ask the jury to disregard and move for a mistrial," to renew objections, and to timely object. To support these arguments, he offers a "sampling" of counsel's alleged errors, which is no more than two footnotes citing a combined 32 pages of the reporter's record. This presentation fails to satisfy Rule 33.1(i) of the Rules of Appellate Procedure, which requires an appellant's brief to "contain a clear and concise argument for the contentions made." *See* Tex. R. App. P. 38.1(i). And even if the issue were adequately briefed, we still could not conclude that the matters raised would be sufficient to overcome the strong presumption that counsel's conduct was reasonable.

showing that the witness was available and the appellant would have benefitted from the witness's testimony. *See id.* at 55. In this case, Dunn does not identify a viable defense that his attorney failed to discover because she did not consult with a forensic expert. Nor does he identify an expert who was available to testify and whose testimony would have benefited his defense. Accordingly, Dunn has failed to show that counsel was deficient for failing to consult with or call a forensic expert.

C

Dunn also argues that during several cross-examinations, his trial counsel asked questions and elicited testimony that bolstered the State's case.

"Cross-examination is inherently risky, particularly in criminal cases where pre-trial discovery is more limited than in civil cases." *Dannhaus v. State*, 928 S.W.2d 81, 88 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). It is an art, not a science, and it cannot be adequately judged in hindsight. *Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005). In this direct appeal, we have no record from which to accurately discern counsel's trial strategy. Moreover, the record suggests that each strategic decision Dunn challenges had a reasonable justification.

First, Dunn argues that during cross-examination of four witnesses, counsel strengthened the State's argument that Maggie was incapable of consenting to sex. But the challenged questions to Swircynski and Betts appear to be an attempt to show that Maggie had "normal days" when she could have consented. Dunn further argues that counsel bolstered the State's case by asking Maggie's psychologist whether he was the doctor who diagnosed Maggie with mental retardation and bipolar disorder. In doing so, counsel was trying to call into question the witness's familiarity with Maggie and thereby undermine his

8

credibility. Similarly, an allegedly unreasonable question to Kenneth Wahl, one of the investigating officers, was an effort to undermine Wahl's credibility by casting doubt on his qualifications to interview people with mental illnesses, diseases, or defects as those terms are used in the statute.

Dunn also claims counsel bolstered the State's case because her cross-examination of two witnesses emphasized the DNA evidence linking Dunn to the offense. But the presence of DNA evidence was irrelevant to whether Maggie was capable of consenting to sexual intercourse, which was the central issue at trial. Therefore, assuming without deciding that Dunn's characterization of counsel's cross-examinations is correct, the alleged errors were not prejudicial.

D

Dunn's final argument with respect to the guilt–innocence phase is that counsel was deficient during closing arguments. First, Dunn argues his counsel conceded Dunn's guilt during her closing argument by acknowledging that "the nurse stated, that the sexual assault occurred the morning of November the 30th," that Maggie "has some type of mental disease," and that Maggie "called herself different names." But these remarks were in the context of counsel's attempt to underscore the evidence that "on some days [Maggie] is as normal as can be." In doing so, counsel recognized the testimony regarding Maggie's "bad days" to then emphasize the fact that "[t]here was no testimony from anybody as to what her day was like on that particular day, November the 30th, 2008."

As Dunn's counsel continued with her closing argument, Maggie stated aloud, "I know he did it." Dunn argues counsel should have objected and requested an instruction for the jury to disregard the remark, but he again fails to demonstrate that the failure to do so was unreasonable, let alone outrageous. The record is silent as to counsel's strategy for ignoring the comment, and she may have reasonably

9

decided that doing so was better than interrupting her closing argument only to draw more attention to Maggie's statement.

With respect to the prosecutor's closing argument, Dunn argues his counsel should have objected when the prosecutor commented on Dunn's failure to testify by stating, "Every single person who could speak for [Maggie] came into this courtroom and sat in the witness stand and did so." But Dunn does not explain, and we do not see, how the challenged comment related to his decision not to testify.

Lastly, Dunn argues his counsel should have objected when the prosecutor said, "To believe Robert Dunn did not know on November 30th, 2008, that [Maggie] could not consent to sex with him, to believe that is to believe that this letter equals consent. It's outrageous." The letter to which the prosecutor referred was a letter Maggie wrote Dunn, which Dunn offered to show that Maggie was attracted to him. But as a response to the defense's argument that the sex was consensual, the statement was a permissible subject area for closing argument. *See Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007). Additionally, Dunn cites two cases for the proposition that an argument is improper if it "attack[s] the lawful efforts of defense counsel" or "strikes at the defendant over the shoulders of defense counsel." *See id.*; *Cook v. State*, 537 S.W.2d 258, 261 (Tex. Crim. App. 1976). But he offers no explanation to suggest that either case applies to the prosecutor's comment in this case.

Accordingly, we conclude that Dunn has failed to demonstrate that his trial counsel's representation was deficient during the guilt–innocence phase of trial, and we overrule Dunn's issue.

V

Finally, Dunn argues his counsel was ineffective during the punishment

10

phase because she failed to present any mitigating evidence and her punishment case was limited to a three-sentence request that the trial court assess punishment at the lower end of the applicable statutory range. Dunn does not show what, if any, mitigating evidence existed at the time. He also asserts that "Harris County is home to a number of experts in the area of the treatment and rehabilitation of sex offenders" and contends that his counsel should have consulted with and called an expert witness "to determine if there were any factors present that might have constituted mitigating evidence." But Dunn neither identifies an expert who was available to testify nor demonstrates that the expert's testimony would have benefitted him. *See Butler*, 716 S.W.2d at 54. Dunn essentially argues that counsel should have introduced mitigating evidence that may not have existed and called an unidentified expert witness whose testimony may not have benefitted him. Such unsupported argument does not overcome the presumption that counsel's representation was reasonable. Moreover, defense counsel could have reasonably determined that the potential benefit of additional witnesses or evidence was outweighed by the risk of unfavorable counter-testimony. *See Bone*, 77 S.W.3d at 834–35. Accordingly, we overrule Dunn's issue.

\* \* \*

In sum, Dunn has failed to demonstrate that his trial counsel was deficient during his trial and that the alleged unprofessional errors prejudiced the outcome of the trial. We therefore overrule his issues and affirm the judgment of the trial court.

/s/    Jeffrey V. Brown
Justice

Panel consists of Justices Frost, Brown, and Busby.
Do Not Publish — TEX. R. APP. P. 47.2(b).

11